**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AETNA INC.,

      Plaintiff,

Case No. 11-15346

HON. DENISE PAGE HOOD

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

**I.     BACKGROUND/FACTS**

This matter is before the Court on Defendant Blue Cross Blue Shield of Michigan's ("Blue Cross") Motion to Dismiss. Plaintiff Aetna, Inc. ("Aetna") filed a response. A reply was filed by Blue Cross.

On December 6, 2011, Aetna filed a Complaint against Blue Cross alleging: Unlawful Agreement in Violation of Sherman Act § 1 (Count One); and, Violation of M.C.L. § 445.772, Michigan Antitrust Reform Act (Count Two). Aetna alleges that Blue Cross, the dominant provider of health insurance and administrative services to managed care plans in Michigan, has implemented a scheme to use ever-increasing premiums from the patients and employers it serves in order to protect its dominant position and thwart competition from Aetna and other competitors. (Comp., ¶ 1) Aetna claims that Blue Cross has entered into exclusionary contracts with hospitals under which it agreed to pay hospitals more money if the hospitals increased the rates they demanded to treat patients covered by its competitors' health plans. (*Id.*)

In 2005, Aetna made an enormous investment to expand its business operations in Michigan, including nearly $390 million in acquiring Michigan-based HMS Healthcare ("HMS"). (Comp., ¶ 2) Aetna sought to bring competition to the Michigan marketplace, provide the benefits of its products and services to Michigan employers and consumers, and lower healthcare costs to Michigan employers and consumers. (*Id.*) Blue Cross responded to Aetna's efforts with an anticompetitive scheme aimed at thwarting competition by increasing the rates that Aetna and other competitors would pay for hospital services. (*Id.*) Blue Cross obtained the funds it used to pay hospitals more by regularly and consistently increasing the premiums its customers must pay. (Comp., ¶ 3) Blue Cross pushed its competitors' premiums higher by forcing hospitals to increase the rates they charged to those competitors. (Comp., ¶ 3)

Blue Cross increased Aetna's medical costs and premiums through exclusionary contracts with hospitals across Michigan. (Comp., ¶ 3) Unlike traditional most-favored nations ("MFNs") clauses, Blue Cross' exclusionary contracts were not designed to secure the lowest price possible from suppliers, but instead Blue Cross agreed to pay higher rates to those hospitals that entered into exclusionary contracts, and it explicitly threatened to pay lower rates if hospitals declined to enter into such agreements. (Comp., ¶ 4)

Aetna and Blue Cross compete to provide: 1) administrative services to health plans underwritten by self-insured employers or other groups; 2) insurance plus administrative services to employer or group health plans, which are referred to as "fully insured" plans; and 3) insurance plus administrative services to individuals. Access to the managed care company's provider network is a central component of the administrative services provided by Aetna, Blue Cross, and other competing providers of health insurance and administrative services. (Comp., ¶ 11)

2

Blue Cross elicits two types of exclusionary contracts from Michigan hospitals. The first requires a hospital to charge Blue Cross' competitors higher prices than Blue Cross pays for the same services–MFN-plus. The second requires a hospital to charge Blue Cross' competitors at least as much as Blue Cross' rates–Equal-toMFNs. Aetna asserts that both types of exclusionary contracts inhibit competition. (Comp., ¶ 18) Aetna further asserts that Blue Cross currently has agreements containing exclusionary provisions with at least 70 of Michigan's 131 general acute care hospitals and that these hospitals operate more than 40% of Michigan's acute care hospital beds. (Comp., ¶ 28)

Aetna claims that its prices at hospitals began to rise in 2008 when Blue Cross began to enforce the exclusionary provisions of its contracts and Aetna's discounts at hospitals deteriorated dramatically by July 2009, the date which Blue Cross required all Peer Group 5 hospitals to comply fully with its exclusionary terms. (Comp., ¶ 28) The market identified by Aetna in the Complaint is the market for the sale of insurance and administrative services that includes access to Michigan-based provider networks. (Comp., ¶ 31) Access to a provider network outside Michigan is not a reasonable substitute for access to a network within Michigan. (Comp., ¶ 33) If a provider network lacks relationships or cannot negotiate competitive rates with providers in one or more local areas, it is at a severe competitive disadvantage when offering services to health plans that desire a statewide network. (Comp., ¶ 37)

Aetna claims that Blue Cross' contracts negatively impacted competition and harmed Aetna's business and consumers throughout Michigan and local areas within the state. (Comp., ¶ 38) Aetna identifies the local geographic areas in which Aetna's ability to compete with Blue Cross was hampered by Blue Cross' exclusionary contracts, in addition to the harm throughout the state.

3

(Comp., ¶ 38)

Blue Cross' Motion to Dismiss raises three arguments: failure to plead injury to competition; failure to plead antitrust injury; and failure to plead a proper geographic market. For the reasons set forth below, Blue Cross' motion should be denied.

## II.   ANALYSIS

### A.   Motion to Dismiss Standard of Review

Blue Cross moves to dismiss based on the allegations set forth in the Complaint citing Rule 8(a)(2) of the Rules of Civil Procedure. It is assumed Blue Cross also seeks to dismiss under Rule 12(b)(6) given the extensive citations to cases analyzing dismissals under that rule.

Rule 8(a)(2) provides a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B. Antitrust Standing Threshold Law

Antitrust standing is not the same as standing to bring suit required in Article III of the United States Constitution. *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 449 (6th Cir. 2007). Antitrust standing is a threshold, pleading-stage inquiry. *Id.* at 450. A condition to antitrust standing is antitrust injury where a claimant must show more than merely an "injury causally linked" to a competitive practice; it must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.

5

*Id.* (citing, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). The Sixth Circuit set forth a two-prong inquiry an antitrust plaintiff must show to establish antitrust standing: 1) that the alleged violation tends to reduce competition in some market, and 2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions. *Tennessean Truckstop, Inc. v. NTS, Inc.,* 875 F.2d 86, 88 (1989). The Antitrust laws were enacted for the "protection of competition, not competitors." *Id.*

### 1. One Competitor

Blue Cross first argues that Aetna fails to show injury to competition in its Complaint, using only one competitor, itself, as a proxy for all the others, a tactic rejected by the courts. Blue Cross asserts that the Complaint alleges no facts, as opposed to conclusions or naked assertions showing harm to competition. Blue Cross claims that Aetna's allegations about market-wide competition are entirely boilerplate and do not survive scrutiny. Blue Cross cites the public record, the State of Michigan's Office of Financial and Insurance Regulation 2011 report, which found that there is opportunity for other insurers to compete; that insurers such as Aetna's and other insurers' market shares increased in 2010; that Blue Cross' share decreased; and that the average small group premiums actually fell. (Ex. 1, Motion)

Aetna argues that Blue Cross misconceives the legal standards regarding dismissals on the pleadings and it utterly ignores the relevant factual allegations in Aetna's Complaint. Aetna noted this Court's Order denying Blue Cross' motion to dismiss as to the claim filed by the United States and the State of Michigan which noted that, "it is plausible that the MFNs entered into by Blue Cross with various hospitals in Michigan establish anticompetitive effects as to other health insurers and the cost of health services in those areas." *United States v. Blue Cross Blue Shield of Michigan,*

2011 WL 3566486, at *7 (E.D. Mich. Aug. 12, 2011).

As noted above, the Antitrust laws were enacted to protect "competition" rather than "competitors." The facts alleged in Aetna's Complaint assert that "competition" has been injured and that Aetna, and "other rivals" have been injured because of Blue Cross' exclusionary contracts with hospitals. Aetna's Complaint alleges that Blue Cross' exclusionary contracts with Michigan hospitals prohibit hospitals from giving Blue Cross' competitors better discounts than the competitors currently receive during the life of the Blue Cross contracts. (Comp., ¶ 18) Blue Cross has ensured that these hospitals can never grant more favorable rates to a Blue Cross competitor regardless of any change in circumstances and that these MFN-plus clauses guarantee that Blue Cross' competitors cannot obtain hospital services comparable to the prices Blue Cross pays, which in turn limits Blue Cross' competitors' ability to compete with Blue Cross. (Comp., ¶ 18(A)) The Complaint asserts that at least 22 Michigan hospitals contain provisions that require the hospitals to charge higher rates to Blue Cross' competitors than the hospitals charge to Blue Cross under the MFN-plus clauses. (Comp., ¶ 45) The Complaints states that these exclusionary contracts have constrained *competition* by:

> Preventing Aetna and other Blue Cross rivals from negotiation with these hospitals to obtain lower prices; maintaining a significant differential between Blue Cross' hospital costs and its rivals' costs at hospitals which prevents rivals from lowering their hospital costs, lowering premiums and becoming competitive threats to Blue Cross; establishing a price floor below which hospitals would not be willing to sell hospital services to other managed care companies; raising the price floor for hospital services to all managed care, resulting in increasing premiums paid by consumers for commercial health insurance; and, limiting the ability of competing managed care companies to compete with Blue Cross.

(Comp., ¶ 47)

The Court finds the Complaint sufficiently alleges injury to competition.  Blue Cross' argument that the Complaint only identifies one competitor, Aetna, is without merit.  Blue Cross' citation to *NicSand* to support is argument that the Sixth Circuit expressly rejected showing injury to only one competitor is not borne out by this Court's reading of *NicSand*.  The Sixth Circuit noted in *NicSand* that it did not mean in the opinion that a potential competitor may never bring an antitrust claim for exclusive dealing.  *NicSand*, 507 F.3d at 457.  The Sixth Circuit noted that should a dominant party use contracts and its current market dominance to establish unreasonable barriers to entry in the future, a potential competitor might have a legitimate antitrust claim.  *Id.*  The Sixth Circuit did not hold that by only identifying one competitor, the plaintiff, an antitrust claim must be dismissed.  The Sixth Circuit found the plaintiff's use of the very same exclusivity that the defendant used to charge prices as a basis for finding no antitrust injury, not that the plaintiff did not identify other competitors in its pleadings.  *Id.*

### 2. Antitrust Injury Competition

Blue Cross argues that Aetna failed to make the requisite causal connection to any alleged "competition-*reducing*" aspect of Blue Cross' conduct, therefore, Aetna failed to state a claim for violation of the antitrust laws.  Blue Cross claims that Aetna only alleges that the nominal cost of just one component of its costs–hospital services at about half of Michigan's hospitals–went up or did not fall, which is insufficient to state an antitrust injury.

Aetna argues that the Blue Cross contracts with the hospitals did not increase competition that would benefit consumers but resulted in inflated prices to competitors and their customers, which reduced the competitors' ability to compete with Blue Cross, and further entrenching Blue Cross' dominant market position.  Aetna asserts that the injury to Aetna was both a direct

consequence of Blue Cross' anticompetitive conduct and the means through which Blue Cross carried out its anticompetitive scheme.

A review of the Complaint shows that Aetna stated sufficient factual allegations that demonstrate harm to competition and that Blue Cross' conduct "reduced" competition. In addition to the allegations noted above, Aetna alleged in its Complaint that Blue Cross pressured hospitals into contracts that raised hospital prices to Blue Cross' competitors. (Comp., ¶¶ 21, 41) Aetna also set forth in detail the exclusionary provisions and their effect on competition in the Complaint. (Comp., ¶¶ 18-19, 27-28, 47-50, 52) Aetna alleges hospitals that raised Aetna's rates because of Blue Cross' exclusionary contracts. (Comp., ¶¶ 21, 27) Allegations are set forth as to how the exclusionary contracts raised the prices to customers. (Comp., ¶¶ 47-50) Aetna's factual allegations set forth plausible facts regarding Blue Cross' action and the causal effect to competition.

### C. Geographic Market

Blue Cross argues that the Complaint should be dismissed because Aetna's geographic market, the entire state of Michigan, is not a plausible geographic market, which it claims differs markedly from the Government's purely localized geographic markets that make up only a portion of Michigan. Blue Cross asserts that both, Aetna and the Government, cannot be correct in their allegations as to geographic markets.

Aetna responds that Blue Cross simply ignores the Complaint's factual allegations and does not even address the relevant markets identified in the Complaint–the markets for insurance and administrative services that include access to Michigan-based provider networks. Aetna asserts it has stated plausible geographic markets in its Complaint.

Relevant product or geographic markets are sufficiently alleged as long as the complaint

9

bears a "rational relation to the methodology courts prescribe to define a market." *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001). Courts hesitate to grant motions to dismiss for failure to plead a relevant product market because market definition is a fact-intensive inquiry only after a factual inquiry into the commercial realities faced by the consumers. *Id.* at 199-200; *Eastman Kodak Co., v. Image Tech., Servs., Inc.,* 504 U.S. 451, 467 (1992). A product market consists of products that have "reasonable interchangeability." *Spirit Airlines, Inc. v. Northwest Airlines, Inc.,* 431 F.3d 917, 933 (6th Cir. 2005).

The Court finds that at this stage of the litigation, Aetna has stated sufficient plausible geographic markets in its Complaint. The Complaint sets forth the products and services with which Aetna is in competition with Blue Cross–administrative services to health plans, insurance plus administrative services to employer or group health plans, and insurance plus administrative services to individuals. (Comp., ¶ 11) Aetna identifies the importance of these products is access to a health care provider network that is subject to negotiated fee schedules. (Comp., ¶¶ 13-16; 32) The Complaint alleges that a provider network must include providers in reasonable proximity to plan members. (Comp., ¶ 16) The Complaint alleges that access to a provider network outside the State of Michigan is not a reasonable substitute for access to a provider network within the state of Michigan. (Comp., ¶ 33) Aetna asserts that many plans serviced by Aetna, Blue Cross and other competitors, require access to a network that covers all local areas throughout the state of Michigan. (Comp., ¶ 34) Aetna further assets that individual customers require access to a state-wide network of providers. (Comp., ¶ 35)

The alternative market definitions in the Complaint sufficiently state a plausible geographic market. A broad market, as well as defined submarkets, may both exist. Each may constitute

separate markets for antitrust purposes. *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 336 (1962). Asserting different groups of customers with different needs and preferences support alternative market definitions and theories by Aetna and the Government. Aetna has stated plausible geographic markets in its Complaint.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Blue Cross Blue Shield of Michigan's Motion to Dismiss **(Doc. No. 11, filed January 27, 2012)** is DENIED.

        S/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated: June 14, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 14, 2012, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager