UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AETNA, INC.,

                Plaintiff,

vs.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan nonprofit healthcare
corporation,

                Defendant.

_____/

Case No. 11-cv-15346
Hon. Denise Page Hood
Magistrate Judge Mona K. Majzoub

**DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO
ENFORCE THE PROTECTIVE ORDER AND EMERGENCY MOTION TO
<u>DISQUALITY PLAINTIFF'S EXPERT VAN E. CONWAY</u>**

1.      Defendant Blue Cross Blue Shield of Michigan respectfully moves this Court for a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 to immediately enforce the Second Amended Stipulated Protective Order (the "Protective Order") by:  (a) requiring that Plaintiff Aetna, Inc.'s damages expert Van E. Conway and his firm Conway MacKenzie, Inc. return all Confidential Information or documents referring to Confidential Information in their possession; (b) enjoining Aetna from providing to Mr. Conway or Conway MacKenzie any further Confidential Information or documents referring to Confidential Information; and (c) precluding Mr. Conway and others at his firm who received Confidential Information from participating in any negotiations between a Michigan hospital and BCBSM for three years.

2.      Blue Cross further moves this Court for an order disqualifying Mr. Conway from serving as Aetna's damages expert in this action because, as demonstrated below and in the accompanying memorandum, Mr. Conway's service on the Board of Directors of Beaumont Hospital ████████████████████████████████████████████████ ██████ should have precluded him from obtaining access to the Confidential Information of Blue Cross and non-parties who produced documents in this litigation in reliance on the Protective Order.

3.      Blue Cross seeks expedited consideration of this motion as the issues bear directly on its own expert report deadline, currently scheduled for April 17, 2013.  Blue Cross is prepared to serve its report or reports on April 17, 2013; however, Blue Cross believes a resolution of this issue before that date is important to the proper management of this litigation.  Blue Cross's expert reports necessarily will contain and refer to Blue Cross's own Confidential Information, as well as information designated Confidential by at least some of the more than 100 non-parties

who produced documents and were deposed in this litigation. Much of this information was not included in Mr. Conway's report (or the report of Aetna's merits expert on whom Mr. Conway purports to rely) and Blue Cross does not know if this information was previously seen by Mr. Conway. Therefore, if Aetna provides Blue Cross's April 17, 2013 expert report to Mr. Conway, Blue Cross and non-parties will suffer further prejudice because additional Confidential Information will be revealed to an individual who should not have such access.

4.     A crucial component of the Protective Order is the requirement that persons involved in contract negotiations between hospitals and insurers be prohibited from receiving Confidential Information. *See* Protective Order ¶ 10(b). This strict prohibition – sought by the parties and non-parties alike – extends to counsel, in-house counsel, and any independent contractors hired to assist counsel.

5.     Rather than select one of the hundreds if not thousands of qualified damages experts with no personal involvement in hospital and insurer contracting in Michigan, Aetna retained Mr. Conway, who sits on the Board of Directors for Beaumont Health System, to serve as its damages expert. Beaumont is one of the largest hospital systems in Michigan; moreover, Beaumont is presently engaged in a merger with the Henry Ford Health System, another large area hospital system.

6.     As Blue Cross's counsel recently discovered, █████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████ At the time of those negotiations, Beaumont's contract contained an MFN-with-differential clause.

2

█████████████████████████████████████████████████████████████████,

as evidenced by documents produced by Beaumont pursuant to subpoena.  Mr. Conway's

██████████████████████████████████████████████████████████

███████

████He represented Beaumont as a member of their Board of Directors (a position

he still holds today), and of particular importance, ██████████████████

████████████████████████████████████████████████

████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████

8.    Despite this, and in violation of the Protective Order, Aetna engaged Mr. Conway

as its damages expert and gave him access to Blue Cross's Confidential Information, as well as

the Confidential Information of hospitals across Michigan – including hospitals that directly

compete with Beaumont.[1]

       9.       Specifically, at paragraph 10(b), the Protective Order provides:

> "[M]aterials designated as Confidential Information … may be
> disclosed to … outside counsel acting for Plaintiff or Defendant in
> this action, that counsel's employees, and independent contractors
> assisting such counsel in the prosecution or defense of this action,
> *except to the extent an individual described in this paragraph was
> involved in or provided advice … concerning negotiations between
> any Michigan hospital and a Party or commercial insurer doing
> business in Michigan at any time between January 1, 2005 and
> three years after the close of this action or the Related
> Litigation.*"[2]

It was critical to all parties, and to many non-parties, that persons involved in contract

negotiations between Michigan hospitals and Blue Cross or commercial insurers not receive any

Confidential Information.  Confidentiality is critical to this litigation as so much of the relevant

information produced by the parties and non-parties relates to highly sensitive financial and

pricing information and contract terms, including trade secret information concerning

agreements between Michigan hospitals and insurers and the negotiations that lead to those

agreements.  Michigan hospitals and insurers, as a standard practice in the healthcare industry,

keep contract terms, including reimbursement rates, confidential so their competitors and

---

[1] We are not aware of any evidence that Aetna's counsel knew that Mr. ███████████
██████████████████████.  Indeed, as discussed later, based on
Aetna's counsel's communications it appears that Mr. Conway may have understated his
involvement when describing it to Aetna's  counsel even after this issue recently came to light.
In any event, whether or not Aetna knew of Mr. █████████████████████████
█████████████, certainly Aetna was in the best position to discover this problem, and that
it did not do so neither excuses nor cures this serious Protective Order violation.

[2] Second Amended Stipulated Protective Order Concerning Confidentiality ¶10(b)
(entered Feb. 22, 2013 at Doc. #191).  This has been the parties' agreement and the Court's
Order from the outset.  *See* Amended Stipulated Protective Order Concerning Confidentiality
¶10(b) (entered Sept. 19, 2012 at Doc. #90); Stipulated Protective Order Concerning
Confidentiality ¶ 10(b) (entered Feb. 14, 2012 at Doc. #16).

contract counter-parties cannot use that information against them in the marketplace or as leverage in subsequent contract negotiations. *See Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins.*, 784 F.2d 1325, 1345-46 (7th Cir. 1986) (Blue Cross Blue Shield of Indiana's data on prices bid by hospitals and the calculations the Blues performed to decide which hospitals to include in its PPO network was "***unquestionably sensitive trade secrets of the Blues" because "[h]ospitals armed with the data could use it to [their] advantage in the next round of negotiations***") (emphasis added).

10.     Blue Cross first learned of Mr. Conway's identity when Aetna served Mr. Conway's expert report on January 30, 2013.  Mr. Conway's CV noted that he was a Beaumont Board Member.  ███████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████ promptly raised the issue with Aetna on March 22, 2013.

███████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████

12.     According to Exhibit C to Mr. Conway's expert report, in arriving at his conclusions regarding damages, Mr. Conway reviewed Blue Cross's Confidential Information, including documents and the deposition transcripts of high ranking Blue Cross officers.  In addition, Mr. Conway reviewed Aetna's merits expert's unredacted expert report, which contains

extensive discussions not only regarding Blue Cross's Confidential Information but also Confidential Information produced by multiple non-parties.

13. Notably, under Protective Order ¶ 10(f), only two Blue Cross in-house attorneys could review *redacted* versions of Aetna's expert reports, and Aetna accordingly redacted from the version of its merits expert's report provided to Blue Cross in-house attorneys any references non-parties' Confidential Information.  But the ***unredacted*** version of Aetna's merits expert's report, which Mr. Conway reviewed, ████████████████████████████ ████████████████████████████████████ and the Confidential Information of hospitals with which Beaumont competes.

14. Thus, Mr. Conway, ████████████████████████████████ ████████████████████ has reviewed – and, to confront his damages model, will need to be cross-examined with – highly sensitive pricing information, negotiation strategies and business information belonging to Blue Cross, Aetna and other commercial insurers, ██████ ████████████████████ What is more, Mr. Conway has reviewed – and will need to be cross-examined with – highly sensitive pricing information and trade secrets belonging to Beaumont's hospital competitors.  All of this information can be used against Blue Cross, Aetna and non-party insurers in subsequent contract negotiations, and against non-party hospitals to gain a competitive advantage in the marketplace.  This is exactly why the parties and non-parties were so focused on precluding access to individuals involved in contract negotiations.

15. Aetna violated the Protective Order by providing Confidential Information to Mr. Conway.  Moreover, before reviewing the Confidential Information, Mr. Conway was required to read and sign the Protective Order, ████████████████████████████████

6

█████████████████████████████████ – a contract worth hundreds of millions of dollars – he should not have accepted the Confidential Information.

16.     The highly sensitive Confidential Information Mr. Conway has reviewed to date is now part of his general knowledge – it cannot be unlearned.  Indeed, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *BASF Corp v. US*, 321 F. Supp. 2d (Ct. Int'l Trade 2004).  But further harm can be prevented by requiring Mr. Conway and Conway MacKenzie to return all Confidential Information now in their possession and by prohibiting Mr. Conway and Conway MacKenzie from obtaining any additional Confidential Information.

████  Furthermore, Mr. Conway should be disqualified as an expert.  Mr. Conway's involvement forces Blue Cross, against its will and with the threat of future competitive harm, to divulge more of its own Confidential Information to ████████████████████ ██████████████████████████████

18.     In accordance with E.D. Mich. L.R. 7.1, Blue Cross conferred on several occasions with Aetna's counsel, explaining the nature of the motion and its legal bases.  Blue Cross requested but did not obtain concurrence in the relief sought.

WHEREFORE, Blue Cross respectfully prays that the Court **ORDER** and **DECREE**, as set forth in the proposed order attached as Exhibit A to the accompanying brief, that:

(a)     Van Conway and his firm Conway MacKenzie must return or destroy all Confidential Information in their possession,

(b)     Van Conway and his firm Conway MacKenzie are prohibited from receiving any additional Confidential Information

(c)     Van Conway and any member or employee of Conway MacKenzie that has

received Confidential Information are prohibited from undertaking any

involvement in or providing advice regarding negotiations between any hospital

and Blue Cross for three years after the close of this action or related actions;

(d)     Van Conway is disqualified from serving as an expert in this action; and

(e)     any and all other such acts as this Court deems appropriate for injunctive relief.

Respectfully submitted,


By:     /s/Joseph T. Muzingo
        Alan N. Harris (P56324)
        Joseph T. Muzingo (P66485)
        BODMAN PLC
        6th Floor at Ford Field
        1901 St. Antoine Street
        Detroit, MI  48226
        (313) 259-7777

        Todd M. Stenerson (P51953)
        HUNTON & WILLIAMS LLP
        2200 Pennsylvania Ave., NW
        Washington, DC  20037
        (202) 955-1500

        **Attorneys for Defendant Blue Cross
        Blue Shield of Michigan**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AETNA, INC.,

                Plaintiff,

vs.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan nonprofit healthcare
corporation,

                Defendant.

_____/

Case No. 11-cv-15346
Hon. Denise Page Hood
Magistrate Judge Mona K. Majzoub

**DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S BRIEF IN SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENFORCE THE PROTECTIVE ORDER AND MOTION TO DISQUALITY PLAINTIFF'S EXPERT VAN E. CONWAY**

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF ISSUE PRESENTED** ......................................................... iii

**STATEMENT OF MOST CONTROLLING/APPROPRIATE AUTHORITY** ................... iv

I.  **INTRODUCTION**..........................................................................1

II. **BACKGROUND** ............................................................................2

    A.  **The Protective Order Prohibits Disclosure of Confidential Information to Persons Involved in Hospital Contracting Negotiations** ...........................2

    B.  ██████████████████████████████████████ ....................4

    C.  **Mr. Conway Reviewed Confidential Information** ...................................7

    D.  **Aetna Refuses to Withdraw its Expert Designation of Mr. Conway and to Cease Providing Blue Cross's and Others' Confidential Information to Mr. Conway** ..........................................................................8

III. **ARGUMENT** ...............................................................................9

    A.  **The Court Should Grant a Temporary Restraining Order and Injunction Requiring Van Conway and Conway MacKenzie, Inc. to Return or Destroy All Confidential Information and Prohibiting Receipt of Any Additional Confidential Information** .......................................................9

        1.  **Blue Cross will succeed on the merits because the disclosure of Confidential Information to Mr. Conway violates the Protective Order** ..........................................................................10

        2.  **Blue Cross and non-parties will suffer irreparable harm if the Court does not enter an injunction** ................................................11

        3.  **Granting the injunction will not cause substantial harm to others**.................12

        4.  **The public interest will be advanced by the issuance of the injunction**..........14

    B.  **The Court Should Disqualify Van Conway From Appearing as an Expert**........14

IV. **CONCLUSION** ...........................................................................17

i

## **TABLE OF AUTHORITIES**

**Cases**

*1st Ave. Funding v. Fairchild Holdings, Inc.*, No. 12-13067, 2012 WL 3061080, at *2 (E.D. Mich. July 26, 2012) ........................................................................................ iv, 11

*3D Systems, Inc. v. Invisiontec, Inc.*, 2009 WL 1868728, at *2 (E.D. Mich. June 29, 2009) ....... 16

*American Empire Surplus Lines Ins. Co. v. Care Centers, Inc.*, 484 F. Supp. 2d 855, 857 (N.D. Ill. 2007) ............................................................................................................. 16

*BASF Corp v. US*, 321 F. Supp. 2d (Ct. Int'l Trade 2004) ........................................... 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) .................................................... 14

*Electrical Workers Pension Trust Fund of Local Union #55, IBEW v. Gary's Electric Service Co.*, 350 F.3d 373, 378 (6th Cir. 2003) ......................................................... 15

*Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985) .................................. 12

*Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) .................. 15

*Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1182 (5th Cir. 1996) ........................................ 16

*Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.*, 796 F. Supp. 1026, 1030 (E.D. Mich. 1992) ......................................................................................................... 12

*Lowry Computer Prods. Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) ............. iv, 11

*Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277 (S.D. Ohio 1988) .......................... 15

*Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ........................................................ 14

*Simon Property Group v. Taubman Centers*, 261 F. Supp. 2d 919, 928 (E.D. Mich. 2003) .......... 9

*Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997) ......... 9

*Uniroyal Goodrich Tire Co. v Hudson*, 856 F Supp 348, 356 (E.D. Mich 1994) ................... iv, 11

*Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994) ..................... 14

*Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) .............. 15

*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) .............................................. 9

**Statutes**

18 U.S.C. § 401(3) ........................................................................................ 14

## STATEMENT OF ISSUE PRESENTED

1.      Should plaintiff Aetna Inc.'s proffered damages expert Van E. Conway and his firm Conway MacKenzie, Inc. be ordered to immediately return or destroy any and all Confidential Information in his possession?

Answer:  Yes

2.      Should Mr. Conway and his firm Conway MacKenzie, Inc. be enjoined from viewing any additional Confidential Information produced in this litigation?

Answer:  Yes

3.      Should Mr. Conway and his firm Conway MacKenzie, Inc. be enjoined from participating in or providing advice regarding any Michigan hospital contract negotiation for three years after the conclusion of this action or related actions?

Answer:  Yes

4.      Should Mr. Conway be disqualified from serving as Aetna's damages expert as a result of his ongoing role on Beaumont Health System's Board of Directors, the resulting violations of the governing Protective Order and the prejudice to Blue Cross if he is allowed to serve?

Answer:  Yes

## <u>STATEMENT OF MOST CONTROLLING/APPROPRIATE AUTHORITY</u>

For the proposition that Blue Cross will suffer irreparable harm if Van Conway and his firm Conway MacKenzie are not ordered to return or destroy all Confidential Information in their possession, prohibited from receiving any additional Confidential Information, prohibited from undertaking any involvement in or providing advice regarding negotiations between any hospital and Blue Cross for three years after the close of this action or related actions and Van Conway is disqualified from serving as an expert in this action;

    a.   An injury is irreparable if not fully compensable in monetary terms. *Uniroyal Goodrich Tire Co. v Hudson*, 856 F Supp 348, 356 (E.D. Mich 1994).

    b.   It is well settled that the "loss of consumer goodwill and the weakened ability to fairly compete that would result from disclosure of trade secrets … does establish irreparable injury." *Lowry Computer Prods. Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997).

    **c.**   "[a]n injury is not fully compensable by money damages if the nature of the [ ] loss would make damages difficult to calculate." *1st Ave. Funding v. Fairchild Holdings, Inc.*, No. 12-13067, 2012 WL 3061080, at *2 (E.D. Mich. July 26, 2012) (Hood, J.).

## I.    INTRODUCTION

Blue Cross recently discovered that Aetna engaged in a serious violation of the Protective Order.  Aetna retained Van Conway as its damages expert and provided him extensive Confidential Information belonging to Blue Cross and non-parties to allow him to conduct his analysis.  However, Mr. Conway is a member of Beaumont Health Systems' Board of Directors,

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████[1]

    The harm to Blue Cross is severe.  ████████████████████████████ possesses not only Blue Cross's Confidential Information (including information about Blue Cross's negotiation strategies and goals) but also non-parties' (*i.e.,* other hospitals and payors) similar information – information so sensitive that even Blue Cross's key decision-makers have been prohibited from reviewing it, despite its central relevance to Blue Cross's defense.

    The harm will be compounded when Blue Cross serves its own expert reports, which necessarily will contain additional Blue Cross and third-party Confidential Information, and when Blue Cross must cross-examine Mr. Conway using still more Confidential Information. Thus, Blue Cross has moved on an emergency basis because its own expert reports are due on April 17, 2013.  If this issue is not resolved by then, Aetna has indicated that it will provide Blue Cross's reports to Mr. Conway, which Blue Cross strongly believes will be a further violation of

---

[1] Second Amended Stipulated Protective Order Concerning Confidentiality ¶10(b) (entered Feb. 22, 2013 at Doc. #191).  This has been part of the parties' agreement and the Court's order from the outset. *See* Amended Stipulated Protective Order Concerning Confidentiality ¶10(b) (entered Sept. 19, 2012 at Doc. #90); Stipulated Protective Order Concerning Confidentiality ¶ 10(b) (entered Feb. 14, 2012 at Doc. #16).

the Protective Order and should not occur.[2]

The facts are not in dispute. Nor is there a complicated dispute about whether Aetna's disclosure of Confidential Information to Mr. Conway violates the Protective Order. As demonstrated below, Aetna' arguments would render the Protective Order a nullity and are easily diffused.

The question before the Court – one that requires urgent resolution – is what to do about this serious violation. And the answer is clear. *First*, an injunction should issue requiring Mr. Conway and his firm Conway MacKenzie, Inc. to return or destroy all Confidential Information in their possession, prohibiting Aetna from providing Mr. Conway or his firm any additional Confidential Information, and prohibiting Mr. Conway and his firm from participating in or providing advice regarding any hospital contracting negotiations with Blue Cross for three years after the close of this action and related actions. *Second*, Mr. Conway should be disqualified as an expert in this litigation.

## II.    BACKGROUND

### A.    The Protective Order Prohibits Disclosure of Confidential Information to Persons Involved in Hospital Contracting Negotiations

Confidentiality is critical to this litigation because so much of the relevant information produced by the parties and non-parties is highly confidential financial and pricing information, including the contract terms between Michigan hospitals and insurers and the negotiations that led to those contracts. Michigan hospitals and insurers, as a standard practice in the healthcare

---

[2] While Blue Cross's reports are close to complete and Blue Cross is prepared to serve its reports according to the current schedule, if the Court believes that more information is needed to address this issue, Blue Cross respectfully requests that the Court suspend the deadline for Blue Cross to serve its expert reports. That would prevent any prejudice to Blue Cross, not only from Mr. Conway improperly reviewing the Confidential Information in Blue Cross's reports, but also from Aetna's new expert, if Mr. Conway is disqualified and the court allows a new expert, from seeing Blue Cross's report in advance (effectively reversing the report order).

2

industry, keep contract terms, reimbursement rates and negotiation strategies confidential so their competitors and contract counter-parties cannot use that information against them in the marketplace or as leverage in subsequent contract negotiations.

Properly protecting this information is made even more important by the fact that a multitude of non-parties – including more than 100 Michigan hospitals and numerous insurers – have produced documents and provided deposition testimony designated Confidential.  It is important to hospitals and insurers alike that neither other hospitals nor other insurers obtain access to their specific contract terms, let alone their internal financial, strategic and other information pertaining to contract negotiations.  Thus Aetna and Blue Cross agreed to prohibit anyone involved in contract negotiations from viewing Confidential Information.  This provision was also included in the Protective Order for the *Shane* action.

The Protective Order plainly states that anyone who has engaged in contract negotiations involving any Michigan hospital and Aetna, Blue Cross or any commercial insurer since 2005, or who anticipates that they will engage in such negotiations for a period of three years after the close of this action or related actions, is prohibited from viewing Confidential Information.

D.    SCOPE OF DISCLOSURE OF PROTECTED INFORMATION

10.    Except as authorized by this Order, documents, transcripts of testimony, or other materials designated as Confidential Information by a Party pursuant to this Order shall not be disclosed to any person other than the persons set forth below, and may be disclosed to and used by the persons set forth below only in this action:

b.    outside counsel acting for Plaintiff or Defendant in this action, that counsel's employees, and independent contractors assisting such counsel in the prosecution or defense of this action, *except to the extent an individual described in this paragraph was involved in or provided advice, or knows it will be involved in or provide advice concerning negotiations between any Michigan hospital and a Party or a commercial insurer doing business in Michigan at any*

*time between January 1, 2005 and three years after the close of this action or the Related Litigation.*[3]

This provision is broad and unequivocal.  Clearly, the parties wanted to ensure that no one who could conceivably use the knowledge gleaned from Confidential Information in subsequent contract negotiations be given ***any*** access to that Confidential Information.

**B.**   ████████████████████████████████████████████

Mr. Conway is on the Beaumont's Board of Directors.[4]  Beaumont is one of the largest health systems in Michigan, and it is presently engaged in a merger with Henry Ford Health System.  Blue Cross pays Beaumont hundreds of millions of dollars every year under the contract that governs the reimbursements for health care services provided to Blue Cross's members.

As Blue Cross's counsel recently discovered, █████████████████████
████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

[3] Protective Order ¶ 10(b) (entered Feb. 22, 2013 at Doc. #191) (emphasis added).
[4] ████████████████████████████████████████
[5] ████████████████████████████████████████
█

4





---

[11] Ex. K.

[12] Ex. L.

[13] Ex. E.

[14] Ex. D.



### C.    Mr. Conway Reviewed Confidential Information

Mr. Conway's January 30, 2013 expert report states that he considered Blue Cross's and non-parties' Confidential Information.[17] ███████████████████████████ ████████████, Mr. Conway reviewed Confidential documents produced by Blue Cross, as well as the deposition transcripts of high-ranking Blue Cross officers. This highly confidential testimony includes information regarding hospital contract negotiation strategies, Blue Cross's payments to various Michigan hospitals with which Beaumont competes, as well as Blue Cross's underwriting determinations and internal pricing mechanisms.

In addition, Mr. Conway reviewed Aetna's merits expert's report. Under Protective Order ¶ 10(f), only two Blue Cross in-house attorneys could review *redacted* versions of Aetna's expert reports. Accordingly, Aetna redacted from the version of its merits expert's report provided to Blue Cross's in-house attorneys any references to non-parties' Confidential Information. But the *unredacted* version of Aetna's merits expert's report, which Mr. Conway reviewed, includes discussions regarding the Confidential Information of commercial insurers with which Beaumont negotiates and the Confidential Information of hospitals with which Beaumont competes. Thus, a Beaumont Board Member has access to more information than

---

15 ████████

16 ████████

17 ████████████████████████████████

Blue Cross's own in-house counsel who are charged with making decisions about this litigation.

**D.** **Aetna Refuses to Withdraw its Expert Designation of Mr. Conway and to Cease Providing Blue Cross's and Others' Confidential Information to Mr. Conway**

Blue Cross first learned of Mr. Conway's identity when Aetna served Mr. Conway's report on January 30, 2013.  Mr. Conway's CV indicates that he is a Beaumont Board Member.[18] ███████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████ promptly raised the issue with Aetna on March 22, 2013.[19]

Aetna originally offered to "wall-off" Mr. Conway from any further access to Confidential Information.  Aetna, however, later retracted that offer.  (That offer did not, in any event, make sense in light of the need for Mr. Conway, if he was going to continue as an expert, to review and respond to Blue Cross's reports and sit for a deposition.)  Aetna informed Blue Cross that it intends to provide Mr. Conway with any information it desires, asserting that Mr. Conway's receipt of other hospitals' reimbursement rate information does not violate the Protective Order.[20]  Apparently based on conversations with Mr. Conway, Aetna also told Blue Cross that ████████████████████████ Aetna did not explain where in the Protective Order it found ████████████ exception and, as demonstrated above, ███



---

[18] ████████████████████████████████

[19] ██████████████████████████████████████

[20] ████████████████████████████████████

## III.    ARGUMENT

**A.    The Court Should Grant a Temporary Restraining Order and Injunction Requiring Van Conway and Conway MacKenzie, Inc. to Return or Destroy All Confidential Information and Prohibiting Receipt of Any Additional Confidential Information**

Blue Cross seeks immediate injunctive relief (1) requiring Van Conway and his firm Conway MacKenzie to return or destroy all Confidential Information in their possession, (2) prohibiting Aetna from providing any additional Confidential Information to Van Conway or Conway MacKenzie, and (3) prohibiting Van Conway and any member or employee of Conway MacKenzie that has received Confidential Information from any involvement in or providing advice regarding negotiations between any hospital and Blue Cross for three years after the close of this action or related actions.

When determining whether to issue a preliminary injunction, courts consider:

> (1) the likelihood that the party seeking the injunction will succeed on the merits of the claim;

> (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief;

> (3) the probability that granting the injunction will cause substantial harm to others; and

> (4) whether the public interest is advanced by the issuance of the injunction."

*Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994); *Simon Property Group v. Taubman Centers*, 261 F. Supp. 2d 919, 928 (E.D. Mich. 2003).  These four considerations "are factors to be balanced, not prerequisites that must be met.  No single factor will be determinative as to the appropriateness of equitable relief ….  A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue."  *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997).

9

Here, Blue Cross will succeed on the merits because Aetna plainly violated the Protective Order by providing Confidential Information to Mr. Conway.   And without immediate injunctive relief, Aetna will engage in further violations of the Protective Order, in particular by providing Blue Cross's reports to Mr. Conway when those reports are served on April 17, 2013. Blue Cross and potentially non-parties will be irreparably harmed absent injunctive relief because Mr. Conway can use the Confidential Information he already has and the additional information he receives to Beaumont's advantage against Blue Cross, and to the detriment of competing hospitals.  Finally, the public interest is advanced by the issuance of an injunction enforcing the Protective Order agreed to by the parties, entered by the Court, and relied on by non-parties.

    **1.**      **Blue Cross will succeed on the merits because the disclosure of Confidential Information to Mr. Conway violates the Protective Order**

Protective Order ¶ 10(b) prohibits Confidential Information produced by a party or non-party from being disclosed to anyone who "was involved in or provided advice . . . concerning negotiations between *any* Michigan hospital and a Party or commercial insurer doing business in Michigan at any time" since January 1, 2005.  ██████████████████████████ ████████████████████████████████ ███████████████████████  Neither is there any dispute that Mr. Conway received and reviewed Confidential Information.

Aetna takes the position that Protective Order ¶ 10(e) – which permits "testifying or consulting experts retained by a Party to assist outside counsel in the prosecution or defense of this action" to review Confidential Information – allows Mr. Conway to have unfettered access to Blue Cross's and non-parties' Confidential Information.  But Aetna's attempt to read this provision in isolation from ¶ 10(b) cannot succeed because it would create a loophole that

10

effectively nullifies the Protective Order.  Under Aetna's interpretation, a party could designate

███████████████████ of its choice to serve as an expert, thereby allowing the party to provide

Confidential Information to that party.  Even worse, the party could designate these individuals

as consulting experts, whose identities never have to be disclosed, thus leaving the other party

and non-parties in the dark as to whether ████████████████████████████████

███████████████████

Aetna is well aware that the provision barring contract negotiators from receiving

Confidential Information is the heart of the Protective Order, and was of immense importance to

Blue Cross, non-parties and even Aetna.  Aetna's tortured reading of the Protective Order makes

no sense in light of this concern, and the Court should reject it.  Indeed, this reading is nothing

more than a post-hoc rationalization of what Blue Cross recognizes is likely an unintentional, but

nonetheless serious, violation of the Protective Order.[21]

### 2.   Blue Cross and non-parties will suffer irreparable harm if the Court does not enter an injunction

An injury is irreparable if not fully compensable in monetary terms.  *Uniroyal Goodrich Tire Co. v Hudson*, 856 F. Supp. 348, 356 (E.D. Mich. 1994).  It is well settled that the "loss of consumer goodwill and the weakened ability to fairly compete that would result from disclosure of trade secrets … does establish irreparable injury."  *Lowry Computer Prods. Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997).  Moreover, "an injury is not fully compensable by money damages if the nature of the [ ] loss would make damages difficult to calculate."  *1st Ave. Funding v. Fairchild Holdings, Inc.*, No. 12-13067, 2012 WL 3061080, at *2 (E.D. Mich. July

---

[21] Because Blue Cross believes the violation likely was not a deliberate attempt to circumvent the Protective Order but appears to be a result of the inadvertent failure to recognize the potential issue, Blue Cross is not currently seeking sanctions for the violation.  Rather, it is seeking the relief necessary to cure the violation to the greatest extent possible.

26, 2012) (Hood, J.).[22]

If not required to return of destroy the Confidential Information in its possession, Mr. Conway and Conway MacKenzie will continue to possess Confidential Information belonging to Blue Cross and many non-parties – ███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ Protective Order ¶ 10(b) was designed to prevent this very occurrence.

Furthermore, the highly sensitive Confidential Information Mr. Conway has reviewed to date is now part of his general knowledge – it cannot be unlearned.  Indeed, "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *BASF Corp v. US*, 321 F. Supp. 2d (Ct. Int'l Trade 2004).  ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████

### 3.      Granting the injunction will not cause substantial harm to others

A preliminary injunction should issue if the moving party "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to defendant if an injunction is issued."  *Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.*, 796 F. Supp. 1026, 1030 (E.D. Mich. 1992) (citing *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985)).

---

[22] *See* opinion attached as Ex. Q

Aetna is in this position solely because it retained a damages expert who is forbidden from reviewing Confidential Information under the Protective Order.  Aetna was free to choose from the many other damages experts around the country.  But Aetna chose a Board Member of one of the biggest health systems in Michigan █████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████

Regardless, any supposed harm Aetna may suffer if its proffered damages expert is prohibited from retaining or reviewing any further Confidential Information pales in comparison to the potential harm to Blue Cross and dozens of non-party hospitals and commercial insurers if the conduct in question is not enjoined.  For example, Blue Cross's reimbursement contract with Beaumont results in Blue Cross paying Beaumont hundreds of millions of dollars every year. ███████████████████████████████████████ could affect that payment by millions – even tens of millions – of dollars.

Furthermore, Mr. Conway will not be harmed by injunctive relief enforcing the terms of the Protective Order to which he agreed.[23]  The injunctive relief sought will not restrict Mr. Conway's ability to pursue his living.  He is the founding partner of Conway MacKenzie, a thriving financial advisory firm.  The demand for damages experts in civil litigation in Michigan and across the country remains robust and Mr. Conway and his firm are free to pursue those engagements. ██████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[23] *See* Protective Order ¶ 12 (before Confidential Information by be disclosed to any person permitted to review it under ¶ 10(b)-(e), that person "must first read this Order or must have otherwise been instructed on his or her obligations under the Order by this Court or counsel for a Party, and shall have executed the agreement included as Appendix A hereto," which provides that the person agrees "to be bound by the terms of the Protective Order").

13

██████████████████████████████████

██████████████████████████

### 4.    The public interest will be advanced by the issuance of the injunction

It is well settled that the enforcement of court orders is vital to judicial integrity. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.' " (internal citation omitted)); *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994) (holding that courts must protect the integrity of its decrees).

This is particularly true in litigation such as this when parties and non-parties have produced Confidential Information – including sensitive business information, the disclosure of which will affect the producing entities' competitive position – with the expectation that it will not be disclosed to anyone who could use it against them. The enforcement of protective orders is vital to ensure parties are forthcoming with their information; if protective orders are not enforced, litigants and non-parties subject to subpoena will be reluctant to cooperate in producing information that may be highly relevant to the disposition of a case and the judicial system will suffer. Parties and non-parties must be able to rely on court-ordered protections regarding their Confidential Information, and they must be assured that any violation of such orders will have appropriate consequences. Anything less will undermine the judicial process.

### B.    The Court Should Disqualify Van Conway From Appearing as an Expert

This Court has the statutorily defined power to punish "disobedience of its lawful writ, process, order, rule, decree or command." 18 U.S.C. § 401(3). This Court also has the inherent power to punish disobedience of its orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Indeed, courts have a wide arsenal of weapons to enforce their orders, including contempt of

court.  *Electrical Workers Pension Trust Fund of Local Union #55, IBEW v. Gary's Electric Service Co.*, 350 F.3d 373, 378 (6th Cir. 2003) (internal citation omitted).  *See also* Protective Order Appendix A (persons receiving Confidential Information agree that any "failure to abide by the terms of the Protective Order . . . will subject me, without limitation, to civil and criminal penalties for contempt of Court").  Furthermore, this Court has the power to enforce the Protective Order it entered in this case.

Specific to the issues presented here, federal courts have inherent and broad power to disqualify an expert from participating in litigation.  *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004); *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) (citing *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277 (S.D. Ohio 1988)).  Neither the Supreme Court nor the Sixth Circuit has adopted a test for the disqualification of an expert.  Federal courts often cite the test in *Paul*, which addressed a dispute over whether an expert retained by one party was previously retained by the opposing party, and whether the opposing party provided that expert confidential information.  *See Wang Labs*, 762 F. Supp. at 1248.  That test asks: (i) did the proposed expert have a prior confidential relationship with an adverse party; and if so, (ii) during the course of that confidential relationship did the adverse party disclose confidential information to the proposed expert that is relevant to the current litigation.  *See Wang Labs*, 762 F. Supp. at 1248.  Though *Paul* is factually distinguishable in that it involves an expert using confidential information previously learned from the opposing party, it confirms why the violation of the Protective Order here warrants disqualification.

At bottom, the real question is whether the party seeking disqualification will be prejudiced if the expert continues to serve as an expert in the litigation, which is the case here.

15

*See 3D Systems, Inc. v. Invisiontec, Inc.*, 2009 WL 1868728, at *2 (E.D. Mich. June 29, 2009)[24]

("Courts have the inherent power to disqualify expert testimony to … preserve public confidence

in the fairness and integrity of judicial proceedings."); *American Empire Surplus Lines Ins. Co.*

*v. Care Centers, Inc.*, 484 F. Supp. 2d 855, 857 (N.D. Ill. 2007) (disqualification may be

necessary to prevent the erosion of public confidence in the integrity and fairness of the judicial

system); *Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1182 (5th Cir. 1996) (in determining

whether to disqualify a proffered expert, courts consider fundamental fairness).

Mr. Conway's disqualification is required in this case.  Any other outcome would reward

Aetna for the violation of the Protective Order.  More important is the nature of Mr. Conway's

report.  Mr. Conway addresses Aetna's claim of lost profits supposedly caused by Blue Cross's

alleged anticompetitive conduct.  He was necessarily required to consider sensitive pricing

information and strategic information regarding Blue Cross's and others' negotiation strategies at

hospitals across Michigan.

Blue Cross will obviously counter Mr. Conway's damages analysis.  To do so, Blue

Cross must discuss not only the Confidential Information on which Mr. Conway relied in

crafting his report; Blue Cross also must discuss Confidential Information not previously

reviewed (or ignored) by Mr. Conway.  Thus, the act of responding properly to Mr. Conway's

report will place even more Confidential Information in his hands.  Blue Cross faces a Hobson's

choice:  Blue Cross can show Mr. Conway additional Blue Cross Confidential Information,

███████████████████████████████████ with one of the largest health systems

---

[24] See opinion attached as Ex. R

16

in Michigan, or not show it to him, thereby harming its defense of this lawsuit. [25]   Blue Cross is

in this untenable position solely as a result of Aetna's conduct, and thus disqualification is the

only appropriate remedy.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

      Furthermore, the Protective Order rejects future recusal as an option.  Protective Order

¶ 10(b) prohibits the disclosure of Confidential Information not just to people who will be

involved in future negotiations, but also to anyone who was involved in such negotiations since

January 1, 2005.  ████████████████████████████████████████████

██████████████████████████

## IV.    CONCLUSION

      This Court should enforce the Protective Order by (1) requiring Van Conway and his firm

Conway MacKenzie to return or destroy all Confidential Information in their possession; (2)

prohibiting Aetna from providing any additional Confidential Information to Van Conway or

Conway MacKenzie; and (3) prohibiting Van Conway and any member or employee of Conway

MacKenzie that has received Confidential Information from any involvement in or providing

---

[25] By way of correspondence dated 3/29/2013, Blue Cross's counsel notified third-parties in this action that their confidential information may have been, or may be, shared with Mr. Conway despite his involvement in Beaumont's hospital negotiations.  *See* Ex. S.

advice regarding negotiations between any hospital and Blue Cross for three years after the close

of this action or related actions.  In addition, the Court should disqualify Mr. Conway from

serving as an expert in this action.

Dated:  April 2, 2013

            Respectfully submitted,


        By:  /s/Joseph T. Muzingo     
           Alan N. Harris (P56324)
           Joseph T. Muzingo (P66485)
           BODMAN PLC
           6th Floor at Ford Field
           1901 St. Antoine Street
           Detroit, MI  48226
           (313) 259-7777

           Todd M. Stenerson (P51953)
           HUNTON & WILLIAMS LLP
           2200 Pennsylvania Ave., NW
           Washington, DC  20037
           (202) 955-1500

           ***Attorneys for Defendant Blue Cross***
           ***Blue Shield of Michigan***

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on I electronically filed the foregoing paper with the Clerk of the Court using the ECF System and that such papers were served by the ECF System upon the attorneys of record.

<u>/s/ Joseph T. Muzingo (P66485)</u>
Joseph T. Muzingo (P66485)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
jmuzingo@bodmanlaw.com
(313) 259-7777

April 2, 2013