UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AETNA INC.,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

    Defendant.
_____/

Case No. 11-15346

HON. DENISE PAGE HOOD

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL**

**I.    BACKGROUND**

Plaintiff Aetna, Inc. ("Aetna") filed a two-count Complaint against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging: Unlawful Agreement in Violation of Sherman Act § 1 (Count One); and, Violation of M.C.L. § 445.772, Michigan Antitrust Reform Act (Count Two). Aetna alleges that Blue Cross, the dominant provider of health insurance and administrative services to managed care plans in Michigan, has implemented a scheme to use ever-increasing premiums from the patients and employers it serves in order to protect its dominant position and thwart competition from Aetna and other competitors. (Comp., ¶ 1) Aetna claims that Blue Cross has entered into exclusionary contracts with hospitals under which it agreed to pay hospitals more money if the hospitals increased the rates they

demanded to treat patients covered by its competitors' health plans. (*Id.*) Aetna claims it was harmed by Blue Cross' actions.

## II.   CURRENT DISCOVERY ISSUES

This matter is before the Court on discovery issues raised by Blue Cross initially in its Emergency Motion to Exclude Aetna's January 7, 2014 Production or Alternatively, for Additional Discovery. (Doc. No. 303) The Court entered an Order Regarding Additional Discovery. (Doc. No. 335) The Court has since held in-person and telephone conferences with the parties to resolve the matter. Many issues have been resolved, but as to the issues the parties were unable to resolve, Blue Cross filed a motion to compel Aetna to: 1) provide answers to Blue Cross' Fourth Set of Interrogatories; 2) produce additional documents related to Blue Cross' Sixth Set of Requests for Production of Documents; and 3) allow a Rule 30(b)(6) deposition.

Blue Cross asserts that on January 7, 2014, Aetna produced 21 new hospital contracts informing Blue Cross that Aetna and its experts intended to rely on these new contracts at trial to support Aetna's position of how it was harmed by Blue Cross' exclusionary contracts and now without such provisions in Blue Cross' contracts, Aetna is in a better position. In its Order, the Court ordered Aetna to provide Blue Cross "the contracts and certain underlying documents to the contracts" as well as "discovery on contracts requested by Blue Cross in its January 13, 2014

motion (Doc. No. 303) and identified in the February 20, 2014 correspondence [from Aetna] to the Court ..." (Doc. No. 336) Aetna was supposed to provide the documents by March 7, 2014, with discovery to be completed by May 30, 2014. (Doc. No. 336)

Blue Cross claims Aetna has since made 11 separate document productions totaling more than 75,000 pages. Aetna's latest document production occurred on May 5, 2014, which Aetna claims completes the production. Blue Cross asserts that Aetna has claimed its production was complete on other occasions, only to produce more documents at a later date. Blue Cross claims that it was concerned Aetna's production contained substantial gaps, and so Blue Cross served its Fourth Set of Interrogatories and Sixth Set of Requests for Production of Documents to address its concerns. After Aetna refused to respond to Blue Cross' request regarding the parameters of its document productions, Blue Cross served Aetna with a Rule 30(b)(6) Notice of Deposition and Request for Documents seeking basic information regarding Aetna's document production processes. Blue Cross claims that Aetna's representations to the Court in a May 12, 2014 letter and during a May 12, 2014 telephone status conference that Blue Cross did not request to identify search protocols is negated by Blue Cross' March 25, 2014 letter to Aetna requesting such protocols. Although Aetna provided the search terms it used on May 9, 2014, Blue Cross claims Aetna failed to use such terms necessary to identify and produce the

3

proper universe of relevant documents.

Aetna responds that the additional discovery Blue Cross seeks is "truly extraordinary." (Resp., Pg ID 24397) Aetna claims there is no basis for the "massive" discovery Blue Cross now seeks. Aetna asserts that the sales-related issues on which Blue Cross seeks discovery were known to Blue Cross and were subject to discovery during the discovery period, but Blue Cross elected the strategy of a more limited approach at that stage. As for the recent contracts, the sole reason for this supplemental discovery, Aetna indicates it has produced and/or offered 9,000 documents (75,000 pages) relating to the negotiation of all hospital contracts entered into during this period, the depositions of the individuals responsible for negotiating and signing the contracts (five depositions), and yet another deposition of Aetna's liability expert. Aetna claims the discovery provided and/or offered is more than ample. While Aetna believes no more discovery is necessary, it has offered a compromise, attached as Exhibit A to its response, which Aetna claims will provide Blue Cross with ample and comprehensive discovery on the remaining issues.

Aetna claims that Blue Cross is now retracting the discovery agreements between the parties as to the number of document custodians. Aetna also claims that Blue Cross now seeks categories of documents that Blue Cross specifically agreed need not be produced when Aetna asked Blue Cross to provide the same discovery

to Aetna. Aetna asserts it has offered reasonable compromises to Blue Cross' requests, but "remarkably," Blue Cross' discovery requests continue to expand. Aetna claims that as of May 8, 2014, the parties had agreed to and scheduled six depositions, but at the May 27, 2014 telephonic conference with the Court, Blue Cross demanded the additional six depositions sought in this motion. After the May 27, 2014 telephonic conference, Blue Cross now demands five additional document custodians.

Aetna asserts that Blue Cross has already taken discovery regarding Aetna's recent sales efforts throughout 2012 and that such sales successes were addressed in Aetna's expert reports. Aetna claims that Blue Cross asked about Aetna's recent sales efforts using its improved hospital rates when Blue Cross deposed Aetna's Kirk Rosin, who is responsible for sales in the national accounts segment in Michigan in November 2012 and when deposing William Berenson, responsible for the middle market segment in Michigan in October 2012. Aetna claims there is no justification for Blue Cross to be permitted to open up broad new discovery into Aetna's sales efforts. Aetna asserts this is not an issue that was revealed when Aetna produced 21 recent contracts in January 2014.

Aetna claims it has provided the discovery required by the Court's February 28, 2014 Order, but has offered compromise positions on each of Blue Cross'

discovery categories that would provide ample discovery on these subjects. With respect to Aetna's sales efforts in 2012 and later (Blue Cross' Category 3), Aetna has offered to identify new customers, provide updated data showing the membership in Michigan for each group and each segment of Aetna's business, and provide for depositions of the sales executives who were previously deposed (Brian Marsella, Kirk Rosin, and William Berenson).

As to Aetna's negotiations with hospitals that did not materialize, or have not yet materialized into contracts (Blue Cross' Category 1), Aetna claims it would be unfair to require Aetna to bear the expense of re-reviewing its hospital negotiators' files for another full document production and that it should be enough to permit Blue Cross to inquire into these negotiations through depositions of Aetna's hospital negotiators. Aetna has offered to make the individuals responsible for negotiations available for deposition. To facilitate the depositions Aetna claims it has provided multiple documents tracking its hospital negotiation activity and has offered to provide each negotiator's calendar.

Aetna claims Blue Cross should not be permitted to retract its prior agreements regarding the scope of discovery now that the discovery gate "swings only one way," such as documents from every person who has negotiated with a hospital in the last ten years, since Blue Cross itself has declined to provide such discovery to Aetna.

(Resp., Pg ID 24416) Aetna claims that searching files of five new document custodians who were not responsible for relevant negotiations should not be allowed. Blue Cross itself has insisted that discovery be limited to a defined set of most relevant custodians and Aetna claims Blue Cross should not be allowed to backtrack on its agreement with Aetna.

Aetna asserts that, without explanation, Blue Cross seeks to double the number of depositions of Aetna witnesses who have had little or no involvement in negotiating the contracts at hand. Likewise, Aetna claims Blue Cross has offered no justification to seek a re-deposition of Aetna's damages expert (Dr. Gustavo Bamberger), even though Aetna informed Blue Cross that Dr. Bamberger's opinions will not change based on the recent contracts. Aetna asserts that Blue Cross' request to depose Aetna's trial counsel regarding the parameters of Aetna's supplemental document production should not be allowed since Aetna has provided detailed responses to all of the questions posed by Blue Cross, and Aetna has offered to respond to any follow-up questions through an ordinary meet and confer process. Aetna claims that deposition of its counsel is unnecessary and inappropriate. As to the requested search terms, Aetna has offered to run the terms, if doing so would resolve the issues with Blue Cross' production request, limited to the files of the current six document custodians.

In its reply, Blue Cross asserts its discovery motion is limited to issues raised by Aetna's new production. Blue Cross claims that Aetna's proposed discovery compromises are inadequate. Blue Cross claims that Aetna's recent productions reveal that it was attempting to "skew" the case by manipulating events to make it appear as if the MFNs harmed Aetna when they did not. (Reply, Pg ID 24579) Blue Cross claims its discovery is narrowly tailored to uncover the "real story behind the post-2012 events Aetna recent introduced." (*Id.*) Blue Cross claims that Aetna's productions show that its story of prices falling after MFNs ceased is not true.

Blue Cross claims that from 2012 to date, as to Aetna's claim that it failed to obtain or chose not to seek new contracts at nearly one-third of Michigan's hospitals, the facts surrounding those failures are relevant as to the facts surrounding new contracts Aetna obtained. Blue Cross asserts it needs the underlying documents, not just depositions of those negotiators, in order to prepare for the depositions. Blue Cross claims it requires the relevant correspondence and internal documents so that it can understand all the facts, not just those selected by Aetna, to refresh the witnesses' recollection, or to impeach the witnesses.

As to documents relating to Aetna's ability to sell insurance based on new hospital prices between July 1, 2012 through January 1, 2014, a period which Blue Cross claims it has had no discovery, such documents are necessary because changes

8

in hospital prices are relevant only if they have a tangible impact on Aetna's ability to compete in the market for sale of insurance. Blue Cross claims Aetna rejected Blue Cross' offer to withdraw this request if Aetna does not so argue this issue, but Aetna rejected the offer.

Regarding custodians and search terms, Aetna has now agreed to run the revised searches, but refuses to run the searches on five custodians identified which Aetna claims were not responsible for relevant negotiations. Blue Cross claims that Aetna's own documents disprove this claim. As to Aetna's claim that Blue Cross waited too long to raise concerns, Blue Cross asserts that Aetna itself asked Blue Cross to wait until production was completed to raise any concerns. Blue Cross claims it could not identify every gap in the production since Aetna did not complete its production until May 5, or provide Blue Cross with its search protocol, custodians, or terms until May 9. Blue Cross asserts that Aetna knew the list of deponents could grow based on Aetna's productions. As to burden, at the May 27 status conference, Blue Cross claims Aetna told the Court that if the Court were to grant Blue Cross' requests, it could produce "everything" in six weeks. (Reply, Pg ID 24585)

### III. ANALYSIS

Rule 26(b) of the Rules of Civil Procedure provides that parties may obtain discovery regarding nonprivileged matter relevant to any party's claim or defense and

9

that relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Rule 37 governing failure to disclose information under Rule 26 states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed.R.Civ.P. 37(c)(1). Rule 26(e), which directs parties to supplement previous disclosures and discovery, "was intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures." *Barlow v. Gen. Motors Corp.,* 595 F.Supp. 2d 929, 935-36 (S.D. Ind. 2009). Harmlessness is the standard under Rule 37, not prejudice. *Sommer v. Davis,* 317 F.3d 686, 692 (6th Cir. 2003). The burden is on the party who made the late disclosure is harmless. *Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003).

In this case, the requested discovery by Blue Cross is the result of the documents Aetna produced in January 2014 and the documents produced as a result of the Court's February 2014 order. Aetna does not specifically argue that the requested documents are not relevant, but argues that discovery is burdensome and that it has ended.

Blue Cross has shown that the requested discovery is relevant to its defense that the MFNs did not affect Aetna's ability to compete in the market for sale of insurance. The negotiation documents from 2012 to 2014 (whatever date the parties agree to), are relevant to Aetna's ability to seek new contracts. The reason why Aetna failed to obtain such new contracts or chose not to seek new contracts to nearly one-third of Michigan's hospitals is relevant to Blue Cross' defense to show whether the MFNs had any impact on Aetna's ability to enter into such contracts.

Changes in hospital prices are also relevant to Aetna's ability to compete in the market, therefore the Court finds relevant the sales data requested for the period July 1, 2012 through January 1, 2014. Aetna cannot argue at trial that it could not compete with Blue Cross unless Blue Cross has the appropriate sales data to be able to show whether the hospital prices are relevant to Aetna's ability to compete.

Aetna has now agreed to run the revised searches as Blue Cross requested, but has not run the searches on five additional custodians Blue Cross identified after

Aetna produced the documents ordered by the Court. Blue Cross has shown, through Aetna's own documents, that these custodians may be relevant to the contracts at issue. Blue Cross has shown that Carl King, Paula Carpenter, and Shaniya Jarrett were responsible for negotiations that affected Aetna's hospital prices. Blue Cross has also shown that Kellogg was the analyst responsible for evaluating the rate proposals at issue and possesses key information about Aetna's decisions regarding the rates. As to Berenson, Blue Cross claims that he is the executive in charge of Michigan operations and was involved in hospital negotiations and strategy.

Regarding additional deponents, Blue Cross claims it has informed Aetna it may require additional deponents based on the production of documents by Aetna. The Court requested the list of deponents and Blue Cross so noted in its current motion. Blue Cross claims that it requested additional deponents based on Aetna's production of documents and to seek basic information regarding Aetna's document production process. Blue Cross is not seeking to depose Aetna's trial counsel. Blue Cross has shown that the additional deponents are relevant as to Aetna's document production process.

### IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Compel Discovery (Doc. No.

377) is GRANTED.

IT IS FURTHER ORDERED that:

(1) Plaintiff Aetna Inc. ("Aetna") shall provide answers to Blue Cross' Fourth Set of Interrogatories and Sixth Set of Requests for Production of Documents related to the following:

> (a) Documents and information related to hospitals where, for the period July 1, 2012 through January 1, 2014, Aetna sought a lower price and was refused by the hospital, or Aetna did not seek a lower price at all as requested in Interrogatories 15, 16, 17 and Requests for Production 129, 130.

> (b) Documents and information related to Aetna's ability to sell commercial insurance in light of its supposed new lower hospital prices for the period July 1, 2012 through January 1, 2014 as requested in Interrogatory 18 and Requests for Production 131, 132, 136, 138.

(2) Aetna shall make available the following individuals for depositions: Suzanne Hall, James Maciag, Michael Winters, Stacy Powell, John Kellog, Kathy Sisson, Allan Greenberg, William Berenson, Brian Marsella, Carl King, Shaniya Jarrett, Dr. Christopher Vellturo, expert, and Dr. Gustavo Bamberger, expert;

(3) Aetna shall make available one or more persons as designated by Aetna to testify regarding the areas of inquiry listed on Blue Cross' notice of 30(b)(6) deposition and request for documents to Aetna dated May 7, 2014;

(4) Aetna shall run the following searches on new custodians Jarrett, Carpenter, Kellogg, Berenson, and King:

> (a) @agh.org;

> (b) (Discount* OR agreement OR leverage* OR contract or negotiat* OR depar* OR de-par OR terminate* OR reimbur*) w/10 (Alpena OR Ascension OR Borgess OR Botsford OR Covenant OR "Harbor Beech"

13

OR "Hills and Dales" OR Marlette OR McKenzie OR Midland OR Sparrow OR St. Mary "Three Rivers" OR tenet OR DMC OR "Detroit Medical Center" OR Carson OR "Henry Ford" OR Holland OR "Battle Creek" OR Trinity OR McLaren OR "U of M" OR University of Mich* OR "South Haven" OR Scheurer);

(c) Discount w/10 (wors* OR decreas* OR increas* OR raise* OR high*);

(d) "favored nation";

(e) (exist* OR old*) w/10 (business OR book); and

(5) Aetna shall run its original searches for new custodians Jarrett, Carpenter, Kellogg, Berenson, and King.

                                                   S/Denise Page Hood
                                                   Denise Page Hood
                                                   United States District Judge

Dated: August 20, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 20, 2014, by electronic and/or ordinary mail.

                                                   S/Julie Owens acting in the absence of LaShawn R. Saulsberry
                                                   Case Manager