# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AETNA, INC.,

      Plaintiff,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

      Defendant.

_____/

Case No. 11-15346

HON. DENISE PAGE HOOD

## ORDER REGARDING VARIOUS MOTIONS IN LIMINE

## I.    BACKGROUND

This matter is before the Court on various Motions in Limine filed by the parties. Briefs have been filed and the Court now issues its order.

Aetna filed a two-count Complaint against Blue Cross alleging: Unlawful Agreement in Violation of Sherman Act § 1 (Count One); and, Violation of M.C.L. § 445.772, Michigan Antitrust Reform Act (Count Two). Aetna alleges that Blue Cross, the dominant provider of health insurance and administrative services to managed care plans in Michigan, has implemented a scheme to use ever-increasing premiums from the patients and employers it serves in order to protect its dominant position and thwart competition from Aetna and other competitors. (Comp., ¶ 1) Aetna claims that Blue Cross entered into exclusionary contracts with hospitals under

which Blue Cross agreed to pay hospitals more money if the hospitals increased the rates they demanded to treat patients covered by its competitors' health plans.  (*Id.*) Aetna claims that Blue Cross' use of most favored nations clauses ("MFNs") reduced competition.

## II.    ANALYSIS

### A.    Motion in Limine Standard of Review

The Federal Rules of Evidence does not explicitly authorize in limine rulings, but the practice was developed pursuant to a district court's inherent authority to manage the course of trials.  *Luce v. United States,* 469 U.S. 38, 31 (1984).  It is within the district court's discretion to make an in limine ruling on evidentiary matters, but there is no right to an in limine ruling.  *Huddleston v. United States,* 485 U.S. 681, 688-89 (1988).  A motion in limine ruling is nothing more than a preliminary opinion which allows the parties to formulate trial strategy.  *United States v. Yannott,* 42 F.3d 999, 1097 (6th Cir. 1994).  The trial court is not bound by an in limine ruling and can change its determination during the trial where sufficient facts have developed to warrant the change or even if nothing unexpected happens at trial. *Id.*; *Luce*, 469 U.S. at 41-42).  In analyzing a motion in limine, the trial court first considers issues of relevance, admissibility and prejudice.

Rule 401 of the Rules of Evidence defines relevant evidence as "evidence

2

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."  The standard set forth in Rule 401 is a liberal one.  *Churchwell v. Bluegrass Marine, Inc.,* 444 F.3d 898, 905 (6th Cir. 2006).  Rule 402 states that "all relevant evidence is admissible, except as otherwise provided ..." and that "evidence which is not relevant is not admissible."  Rule 403 states that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Trial courts have broad discretion in determining whether to admit evidence based on considerations of relevance, materiality and prejudice. *United States v. Jackson-Randolph,* 282 F.3d 369, 376 (6th Cir. 2002).

### B.   Evidence Required in Antitrust Law

The Sherman Act, 15 U.S.C. § 1, provides that a contract, combination in the form of trust, *or* conspiracy, in restraint of trade or commerce is illegal.  15 U.S.C. § 1.  Section 1 has been interpreted to prohibit "unreasonable agreements in restraint of trade.  *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  Section 1 provides that a contract, combination in the form of trust, *or* conspiracy, in restraint of trade or commerce is illegal.  15 U.S.C. § 1.  A plaintiff must prove that defendant 1)

3

contracted, combined or conspired among each other, that such 2) unreasonably restrained trade in the relevant market. *Nat'l Hockey League Players' Assoc. v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 718 (6th Cir. 2003); *Expert Masonry, Inc. v. Boone County, Ky*, 440 F.3d 336, 342 (6th Cir. 2006). The antitrust plaintiff "must show (1) that the alleged violation tends to reduce competition in some market and (2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the defendant's actions." *Tennessean Truckstop v. NTS, Inc.,* 875 F.2d 86, 88 (6th Cir. 1989). A private antitrust plaintiff, in addition to having to show injury-in-fact and proximate cause, must eventually prove "antitrust injury." *In re Cardizem CD Antitrust Litigation,* 332 F.3d 896, 909 (6th Cir. 2003). "Antitrust injury" is (1) "injury of the type the antitrust laws were intended to prevent" and (2) injury "that flows from that which makes defendants' acts unlawful." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977). The relevant antitrust laws "were enacted for the protection of *competition* not *competitors*." *Id.* at 488 (1977); *Indeck Energy Servs., Inc. v. Consumers Energy Co.,* 250 F.3d 972, 977 (6th Cir. 2000). A plaintiff's showing of harm only as to its capacity as a competitor in the marketplace, not as a defender of marketplace competition, is insufficient to establish an antitrust claim. *Valley Products Co., Inc. v. Landmark,* 128 F.3d 398, 403 (6th Cir. 1997).

### C.   Blue Cross' Motion in Limine to Exclude At Trial Aetna's Written Expert Reports (Doc. No. 317)

Blue Cross seeks to exclude two written expert reports submitted by Aetna authored by Dr. Christopher Velltturo and Dr. Gustavo Bamberger asserting these reports are hearsay.  No written opposition was filed to this motion by Aetna.

Generally, the written report of expert witnesses prepared in anticipation of trial are inadmissible because they are considered hearsay.  Fed. R. Evid. 702, 703, 1006; *Engebretsen v. Fairchild Aircraft Corp.,* 21 F.3d 721, 729 (6th Cir. 1994).  The expert reports will be excluded at trial and Blue Cross' Motion in Limine to Exclude at Trial Aetna's Written Expert Reports is granted.

### D.   Blue Cross' Motion in Limine to Exclude Evidence of Supposed Antitrust or Other Legal Concerns (No. 318)

Blue Cross seeks to exclude evidence of and all references to any "antitrust concerns" or other legal concerns relating to the use of MFNs that Michigan hospital executives or Blue Cross witnesses expressed or considered, including but not limited to: 1) internal Blue Cross communications; 2) internal hospital communications; and 3) communications between Blue Cross witnesses and hospital executives.  Blue Cross claims that such evidence lacks probative value since these opinions do not answer the question of whether the conduct was illegal.  Even if these documents or witnesses' testimony had probative value, prejudice to Blue Cross far outweighs any

5

probative value of this evidence.  Blue Cross claims that the mere expression of "antitrust concerns" would confuse and mislead the jury that there would be a legal basis for that concern.

Aetna responds that the statements Blue Cross seeks to exclude are central to explain to the jury that even though numerous parties raised concerns that these contracts violated federal antitrust laws, that Blue Cross continued to pursue these contracts in the face of these concerns.  Aetna claims these concerns speak volumes about Blue Cross' intentions and the importance of these contracts in Blue Cross' eyes.  Aetna asserts that this evidence is relevant to show that Blue Cross had to pay millions of dollars to hospitals to accept the MFNs because these hospitals resisted the contracts based on antitrust concerns.  The evidence is also relevant according to Aetna because it casts doubt on the credibility of testimony that Blue Cross will likely present at trial, that the MFNs were adopted with the support of hospitals or to further Blue Cross' "social mission."    Aetna argues that this evidence shows that the witnesses were well aware of the risk.  Aetna claims that this evidence also goes to the issue of Blue Cross' market power in that despite the risks, Blue Cross had the ability to control the behavior of the hospitals.  Aetna asserts that the evidence also shows Blue Cross' coercive behavior which undermines Blue Cross' argument that the MFNs were procompetitive.  Aetna claims that the jury is entitled to know the setting

6

of the case and how the MFNs came into effect.

Blue Cross replies that Aetna wants the jury to conclude that because some hospitals and their lawyers questioned whether MFNs raised issues under the antitrust laws, the MFNs must have been illegal and had anticompetitive effects. Blue Cross claims this is improper and Aetna's various arguments as to why such evidence might be relevant should fail. Blue Cross argues that it is the Court's role to instruct the jury as to the law, and the jury's role to determine the relevant facts. Blue Cross argues that Aetna should not be allowed to obscure or usurp either or both of those functions through non-party lawyer and/or hospital remarks expressing "antitrust concerns" about MFNs before the MFNs went into effect. Blue Cross asserts that evidence of antitrust concerns does not demonstrate anticompetitive effect and whether the MFNs actually had such anticompetitive effect. Blue Cross claims that Aetna's conspiracy arguments and rule of reason arguments are not relevant in this case because there are no allegations of conspiracy and the rule of reason arguments apply to monopoly and RICO cases. Aetna's argument in seeking to allow the evidence is premised on the theory that hospital lawyers and executives knowingly entered into illegal contracts because they were coerced by Blue Cross. The hospital executives' concerns demonstrate that they were doing their jobs during the negotiations of the contracts.

The Court finds that the proposed evidence sought by Aetna to be

7

admitted–documents as to a hospital's concern about antitrust violations–is not relevant to the issues to be tried by the jury. These concerns were raised during the various negotiations between Blue Cross and the hospitals. The issue is whether the contracts entered into by Blue Cross and the hospitals, with the MFN provisions, reduced the competition in some markets and whether Aetna's injury, if any, resulted from a decrease in that competition rather than from some other consequence of Blue Cross' actions, including any alleged coercive actions by Blue Cross to make the hospitals sign the contracts. *See, Tennessean Truckstop,* 875 F.2d at 88. The illegality at issue is not whether the contracts themselves were illegal, but whether the contracts, specifically the MFN provisions, illegally affected competition. This means that the relevant evidence to be focused on is what occurred after the MFNs went into effect, not whether there were concerns that the contracts were illegal before entering into the contracts. As noted by Blue Cross, there is no conspiracy claim before this Court, which means the hospitals' concerns before entering into the contracts with Blue Cross are not relevant. Even though Aetna claims that the hospitals were "coerced" into entering into the contracts, the fact is that they did so. The issue before the jury is not whether such contracts exist. Here, there is no dispute that the hospitals entered into the MFN contracts with Blue Cross, therefore any concerns raised either by the hospital or Blue Cross officials during the negotiations of the contracts are not

relevant to how the MFN contracts affected competition after the contracts went into effect. Blue Cross' Motion In Limine to Exclude Evidence of Supposed Antitrust or Other Legal Concerns prior to the applicable parties entering into the MFN contracts is granted.

### E. Blue Cross' Motion in Limine to Exclude Evidence of and all References to MFN Hearsay and Speculation (No. 319)

Blue Cross seeks to exclude evidence, mostly from Aetna employees, that Blue Cross' MFNs had effects on Aetna's business as hearsay and based on lack of personal knowledge. Blue Cross cited three examples of this type of testimony. The first was the testimony of Aetna employees, Ms. Lantzy-Talpos who testified that Blue Cross' MFN caused Aetna's rate at Beaumont to increase, but she also admitted that no one at Beaumont told her that and that her conclusion was based on newspaper accounts. Kelly Wright, a Cofinity employee, testified that the MFN contracts caused harm to Cofinity's business, but admitted that she did not know exactly how the MFN contracts affected the business. Mr. Winters, an Aetna employee, testified that he thought it was possible that a hospital with an MFN contract with Blue Cross could affect Aetna's rate at that hospital, but that he did not know how. Daniel Fishbein, an Aetna employee, testified that it was a reasonable theory that if Humana was seeing some decrease it was because of the Blue Cross MFNs. He claims that this affected

all discounts including the Cofinity discounts.   Mr. Fishbein conceded this information came from communications with Humana about discount degradation, but not specifically about MFN contracts.

Blue Cross argues that the only person who would have first-hand knowledge whether the MFNs affected the rate a hospital gave Aetna would be that hospital.  This non-expert testimony as to why Aetna received a certain rate from a certain hospital is not based on personal knowledge and because these witnesses are not expert witnesses, Blue Cross argues they cannot speculate as to the reason why Aetna received such a rate.

Aetna responds that Blue Cross merely cited snippets of the witnesses' testimony.   Aetna claims that these witnesses have the experience and personal knowledge of whether the MFNs affected Aetna.  Some of these witnesses are contract negotiators who have ample foundation, experience and personal knowledge to testify about the impact of the MFNs on Aetna's business.  Aetna claims that Blue Cross' request for a broad, categorical and blanket exclusion of its witnesses without any inquiry into the purpose for each testimony offered or whether the testimony is relevant hearsay should be denied at this time.

The Court at this time declines to exclude Aetna's non-expert witnesses from testifying at trial given that they may have the experience and personal knowledge of

Aetna contracts with the hospitals and the impact of the MFNs.  Although the testimonies cited by Blue Cross, without more, may indicate that the witnesses' testimonies are based on hearsay or lack of personal knowledge, the Court will not order a blanket exclusion of these witnesses' testimony at trial.  However, if at trial a hearsay statement or testimony based on lack of personal knowledge will be offered, Blue Cross may certainly object to such at trial.  The Court will then rule on the admissibility of such testimony to be offered at trial.  Blue Cross' Motion in Limine to Exclude Evidence of and all References to Alleged Effects of MFNs by Aetna non-expert witnesses is denied without prejudice.

### F.   Blue Cross' Motion in Limine to Exclude Evidence of Changes to Michigan Law (No. 321)

Blue Cross moves to exclude any reference at trial regarding the enactment of M.C.L. §§ 550.1400 and 550.3405a and OFIR Order No. 12-035-M, all of which address the legality of MFNs, including any statement that MFNs are illegal or prohibited.  Blue Cross claims the changes to the law are not relevant to the issues in this case and do not add to any fact Aetna is required to prove at trial.  Blue Cross argues that the primary law at issue is 15 U.S.C. § 1.  The changes in Michigan law are irrelevant since they were enacted after Aetna filed its complaint and were not in effect during the relevant period.  Blue Cross claims the changes in the law are

irrelevant and inadmissible under Rules 401 and 402 and unduly prejudicial to Blue Cross.

Aetna claims that Blue Cross' motion to exclude references to related litigation, investigations and legislation regarding MFNs is a key part of its effort to conceal critical facts from the jury and tilt the case in its favor. Aetna asserts that Blue Cross' defense is that the MFNs did not prevent Aetna from securing better rates from hospitals. Aetna claims that the evidence at issue will show that Blue Cross' MFN contracts accomplished their intended goal to keep competitors from eroding Blue Cross' hospital discount advantage. Aetna will show that before the MFNs took effect, Aetna had improved its hospital rates and when the MFNs took effect, Aetna was unable to make further progress. Aetna claims that Blue Cross' MFN grip loosened in October 2010 when the government and private plaintiffs filed lawsuits challenging the MFNs. Aetna states that Blue Cross' "chokehold" was finally broken when the MFNs were banned in Michigan in early 2013. Aetna asserts that Aetna began experiencing success in achieving hospital rate improvements as a direct result of this litigation and legislation. Aetna claims that the related lawsuits and legislative ban on MFNs are highly relevant to the antitrust impact and causation to show the "before-during-after" scenario.

Blue Cross replies that Aetna does not discuss the change in Michigan law in

12

2013 without "burying" that issue in a list of other evidence Blue Cross has moved to exclude in other motions. Blue Cross claims Aetna has not connected the post-Complaint changes in Michigan law and its asserted injury because of the MFNs. Blue Cross asserts that Aetna cannot really expect the Court to believe that changes in Michigan law in 2013 allowed Aetna to achieve contracting successes after October 2010. Blue Cross claims that Aetna in fact has told the Court that evidence of changes in Michigan law that allowed Blue Cross to reorganize as a non-profit mutual company should be excluded because they are irrelevant. (Doc. No. 324) Blue Cross asserts that Aetna wants to tell the jury that the law was changed in 2013 prohibiting MFNs so that the jury will assume that MFNs had illegal effects which Michigan needed to remedy. Blue Cross claims there is serious prejudice from that improper inference which substantially outweighs any probative value Aetna can attempt to raise.

The Nonprofit Health Care Corporation Reform Act, M.C.L. § 550.1400 *et seq.*, became effective on March 18, 2013. P.A. 2013, No. 4, Imd. Eff. March 18, 2013; M.C.L. § 550.1400. The statute applies "to the use of a most favored nation clause in a provider contract on and after February 1, 2013." M.C.L. § 550.1400(1). However, contracts with MFNs beginning February 1, 2013, may still be used if approved by the commissioner. M.C.L. § 550.1400(2). Beginning January 1, 2014,

13

a health care corporation "shall not use a most favored nation clause in any provider contract, including a provider contract in effect on January 1, 2014." (M.C.L. § 550.1400(3))

Based on the language of the statute, the Court finds that the change in the law in 2013 prohibiting MFNs is not relevant to whether the MFN contracts at issue caused injury to Aetna. The 2013 change in the law does not establish any material fact at issue. Most statutes are meant to regulate primary conduct, and will not be applied in trials involving conduct that occurred before their effective date. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 291 (1994). The claim in this case involves violations of the Sherman Antitrust Act and Michigan statute effective in 2010, not a claim under the Michigan statute enacted in 2013. The Court finds any reference to the new law enacted in 2013 is not relevant. The Court grants Blue Cross' Motion in Limine to Exclude Evidence of Changes to Michigan Law.

### G. Aetna's Motion in Limine to Preclude Evidence or Argument Regarding Blue Cross' Purported Social Mission and Nonprofit Status (No. 322)

Aetna seeks to exclude any reference at trial to Blue Cross' status as a nonprofit and any evidence or argument regarding Blue Cross' social mission as a justification for entering into MFNs. Aetna claims that this evidence is irrelevant because it would result in a trial within a trial regarding Blue Cross' social mission, the benefits it

14

receives from the State for performing that mission and whether it is necessary for Blue Cross to harm competition to perform any such mission. Aetna claims that as an insurer of last resort, Blue Cross enjoys an exemption from state and local taxes, which Aetna claims outstripped the burdens of fulfilling its social mission. Aetna asserts that Blue Cross' own witnesses testified that the MFN contracts had nothing to do with Blue Cross' social mission. Aetna claims that any such evidence would unfairly prejudice Aetna. Aetna asserts that Blue Cross' status as a non-profit is irrelevant because non-profits may be held liable under antitrust laws. Aetna claims that any reference to Blue Cross' status would be prejudicial in that the jury might be influenced to decide the case based on improper grounds.

Blue Cross responds that Aetna's motion is based on the false premise that the only purpose for introducing evidence of Blue Cross' nonprofit status and social mission is to excuse allegedly anticompetitive conduct by Blue Cross. Blue Cross claims that its nonprofit status and social mission is material in at least three ways. First, Blue Cross argues that this evidence is directly relevant to refuting Aetna's key contention that the MFNs were the cause of Blue Cross' success and Aetna's struggles in obtaining contracts with both hospitals and downstream insurance customers. Blue Cross claims the evidence shows that the Michigan's nonprofit hospitals did not trust for-profit Aetna, but instead valued Blue Cross' social mission's contributions to

Michigan's healthcare system.  Blue Cross asserts that other customers, including union locals, businesses and others, also preferred Blue Cross to Aetna for this same reason.  Blue Cross claims that if it cannot present this evidence to the jury, the jury will only have before it Aetna's reason for its failure to obtain contracts with the hospitals was because of the MFNs.  Blue Cross asserts that the jury should be able to hear the evidence that there are other reasons why Aetna was unable to obtain contracts with hospitals besides the MFNs.

Blue Cross' second argument is that this evidence refutes a number of Aetna's claims that Blue Cross is inefficient, overpaid small rural hospitals to secure MFNs and has earned massive profits.  As a nonprofit, Blue Cross argues it cannot earn profits, but is required under the statute to have reserves.  Aetna as a for profit is able to raise capital by selling equity in order to pay claims when its premium levels are too low.  Blue Cross claims that unlike a for-profit like Aetna, it is unable to raise capital.  Blue Cross is required under the statute to maintain surplus to cushion against periods when claims exceed premiums.  The surplus amount may seem large, but when compared to other Blue plans or when one considers the number of insureds whom Blue Cross must protect, the number is not so large.  If Blue Cross' nonprofit status is not raised before the jury, it would not be able to assess Aetna's claim of "massive profits" without understanding nonprofits and Blue Cross' status as a

16

nonprofit.

The third argument is that Blue Cross' unique structure established by the Michigan legislature, is a central fact in the framework and competitive landscape of Michigan health care and health insurance for the relevant time period.  Blue Cross claims it would be impossible for the jury to understand Blue Cross' conduct, including the legitimate business justifications, without knowing the central fact of Blue Cross' existence.  Blue Cross asserts that its status a nonprofit with a social mission is material evidence, although it may not be dispositive on whether the MFNs violated the antitrust statute.  Blue Cross claims that Aetna's argument that a nonprofit is not allowed to violate the antitrust law *because* it is a nonprofit, is not the same as whether the nonprofit status is relevant to its actions and conduct as it pertains to any violation of the Sherman Act.  The fact that Blue Cross is a nonprofit is central to its expert's economic analysis, Blue Cross claims this evidence is relevant.  Blue Cross' expert shows that the nonprofits spend more of each premium dollar on medical care than for profits, including Aetna, and have higher customer satisfaction ratings.  This evidence, Blue Cross argues, is relevant to how Blue Cross and Aetna act and the customers' reactions to those actions.  Blue Cross asserts that its social mission is not a pretext for the MFN as argued by Aetna.  Instead, Blue Cross claims that its witnesses recognize the link between hospital discount advantage and the social

mission.  Without the discount, Blue Cross claims it would be at a disadvantage because as recognized by the Michigan legislature, its population is unhealthier which exposes Blue Cross to a higher risk.  As an insurer of last resort, Blue Cross claims it cannot cut unhealthy patients, whereas Aetna, as a for-profit, is able to do so.

Most claims under Section 1 of the Sherman Act, as in this case, are evaluated using a "rule of reason" approach where the "finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature and effect."  *In re Cardizem*, 332 F.3d at 906 (quoting *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997)).  The Court finds that Blue Cross' status as a nonprofit with a social mission is relevant to the issue of why Blue Cross sought MFNs from hospitals and as a defense to Aetna's claim that Blue Cross sought MFNs to crush the competition.  Without evidence as to the statute-mandated Blue Cross nonprofit status and the requirements on Blue Cross set forth in the statute, including as an insurer of last resort, Blue Cross would be unable to present any evidence that it sought the MFNs because of its status.  In order for the jury to have sufficient information to decide whether the MFNs are illegal, as opined by the Supreme Court and the Sixth Circuit, the jury must "take into account a variety of factors, including specific

18

information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature and effect." *Id.* It is relevant for the jury to have facts before it as to Michigan's health insurance business, which includes statute-mandated non-profit insurer Blue Cross, and the nature of such business in Michigan.

The status of Blue Cross and how the hospitals perceive Blue Cross and Aetna is also relevant to Aetna's claim of antitrust injury since Aetna must establish that its injury "flowed" because of the anticompetitive effects of the MFNs and not from other reasons such as the hospitals' desire to contract with Blue Cross instead of Aetna. *Id.* at 911 ("[n]o antitrust injury because the plaintiff's injury did not "flow" from the anticompetitive effects of the alleged antitrust violation.") Aetna's Motion in Limine to Preclude Evidence or Argument Regarding Blue Cross' Purported Social Mission and Nonprofit Status is denied.

### H.   Aetna's Motion in Limine to Preclude Blue Cross from Informing the Jury that Compensatory Damages will be Trebled (No. 323)

Aetna seeks to preclude Blue Cross from informing the jury that any damages found would be trebled under the Clayton Act, 15 U.S.C. § 15(a). Aetna claims that Blue Cross has indicated it intends to inform the jury of the mandatory trebling provision in the apparent hope that the jury will artificially reduce its damage

calculation.

Blue Cross responds that it has no intention of arguing that the jury should reach a lower damages number because the Court will automatically treble any damage award, but opposes a blanket exclusion of the information. Blue Cross claims that a jury instruction would protect Aetna and Blue Cross from the potential prejudice both may encounter during the trial. Blue Cross claims the case has received some press attention and so potential jurors may be aware of the treble provision in the antitrust laws. Blue Cross also argues that such information may be necessary to counter Aetna's attempts to play on the jury's sympathy that damages would somehow enhance the public good by helping Aetna to compete.

The Court finds at this time that the issue of trebling the damages is not relevant to the issues to be tried by the jury. In light of Blue Cross' intention not to argue that the jury should reach a lower damages amount because of the treble damage provision, the Court will not allow any evidence or argument regarding the trebling the damages. If a party believes the treble damage provision becomes relevant at trial, the parties should then seek to confer with the Court at side bar prior to any mention of the treble damage provision. As to the jury instruction issue, the Court will consider such if it is required at trial. The Court grants Aetna's Motion in Limine to Preclude Blue Cross from Informing the Jury that Compensatory Damages will be Trebled.

I.    **Aetna's Motion in Limine to Preclude References to Blue Cross'**
**Mutual Ownership Status (No. 324)**

Aetna seeks to preclude at trial references of Blue Cross' mutual ownership
status as of January 1, 2014.  Aetna argues that Blue Cross' status as a mutual
insurance company has no connection to any fact of consequence in this litigation.
If introduced, Aetna claims that it would most likely be employed as an emotional
appeal to shift the focus of the damages inquiry from the extent of Aetna's injuries to
a purported effect of the verdict on Blue Cross and its policyholders.  Aetna claims
that this is irrelevant to the jury's function and should be precluded.

Aetna further argues that if Blue Cross were to introduce evidence or present
argument about its mutual status, this would serve as an improper appeal to the jury's
self-interests.  Aetna claims Blue Cross controls approximately 60-70% of the
commercial health insurance market in Michigan.  Aetna asserts that it is almost
certain that members of the jury pool, or at the very least some of their family
members, friends, or co-workers, will be Blue Cross policyholders.  Aetna claims that
allowing Blue Cross to present evidence of its mutual structure would seriously
prejudice the jury against awarding damages in this case.

Blue Cross responds that it will not argue to the jury that it should not award
Aetna damages because the jurors, who may be current Blue Cross policy holders, will

21

bear the financial brunt of the judgment.  Blue Cross notes that Aetna in its brief admits the fact that Blue Cross and the State of Michigan agreed that Blue Cross' policyholders do not have any residual rights to surplus in the case of dissolution and that any potential concerns about harms unique to insurance policyholders are not present in this case.  Blue Cross claims that the mere fact of its structure is nothing more than a true statement of its identity.  Blue Cross asserts that Aetna's arguments in this motion is inconsistent with Aetna's position opposing Blue Cross' motion seeking to exclude statements of the post-Complaint changes in Michigan law prohibiting MFNs.  Blue Cross claims Aetna cannot have it both ways–prohibiting mention of Blue Cross' current status as a mutual company and allowing statements that MFNs are now illegal.

The legislature provided for a merger of a healthcare corporation with a nonprofit mutual disability insurer; the surviving entity of a merger being the nonprofit mutual disability insurer.  M.C.L. § 550.1220(1).  A healthcare corporation shall not be formed on or after January 1, 2014.  M.C.L. § 550.1201a.  As of January 1, 2014, Blue Cross became a nonprofit mutual company.  P.A. 2013, No. 4, Imd. Eff. March 18, 2013.  For the same reasons set forth in the Court's ruling prohibiting statements regarding the post-Complaint changes in the law as to MFNs, the Court will not allow mention of Blue Cross' post-Complaint change in status to a non-profit

mutual company.  The Court finds Blue Cross' change of status to a non-profit effective in 2014 is not relevant to the facts the jury has to decide.  Blue Cross' status in 2014 has no bearing on how Blue Cross acted when the Complaint was filed.  The Court grants Aetna's Motion to Preclude References to Blue Cross' Mutual Ownership Status.  However, the issue Aetna raises regarding the jury pool may be an issue the parties need to address with the Court at the final pretrial conference.

**J.    Blue Cross' Motion in Limine to Exclude References to Other Lawsuits (No. 325) and Motion in Limine to Exclude Reference to Government Investigations and Lawsuits (Doc. No. 332)**

Blue Cross seeks to exclude any reference to other lawsuits against Blue Cross including, but not limited to:  *The Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (E.D. Mich.), *Michigan Regional Council of Carpenters Employee Benefits Fund v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14887 (E.D. Mich.), *Scott Steele v. Blue Cross Blue Shield of Michigan*, No. 2:11-cv-10375 (E.D. Mich.), *City of Pontiac v. Blue Cross Blue Shield of Michigan*, No. 2:11-cv-10276 (E.D. Mich.), *Frankenmuth Mutual Ins. Co. v. Blue Cross Blue Shield of Michigan*, No. 1:10-cv-14633 (E.D. Mich.), and *In re: Blue Cross Blue Shield Antitrust Litigation* (MDL No. 2406), No. 2:13-cv-20000, and a series of cases about administrative services contracts referred to as the "Access Fee cases," including *Hi-Lex Corp. v. Blue Cross Blue Shield of Michigan*, Case No. 2:11-cv-12557 (E.D.

23

Mich.).  Blue Cross also seeks to exclude any reference to the United States and State of Michigan's investigations and lawsuits against Blue Cross in *United States, et al. v. Blue Cross Blue Shield of Michigan*, Case No. 2:10-cv-14155 (E.D. Mich).

Blue Cross argues that as to the class action cases, with the lead case being *The Shane Group* case, these cases are not relevant to the issues before the jury in Aetna. Blue Cross claims that in *The Shane Group* case, other than allegations, there have been no findings of liability against Blue Cross.

Blue Cross asserts that in *The Shane Group* case the putative class amended its proposed class definition to focus on discrete effects at particular hospitals with MFNs, which does not reconcile with Aetna's theory that Blue Cross' MFN program had a market-wide uniform effect.  As to the Access Fee cases and the MDL antitrust case, Blue Cross argues that these cases do not involve the MFN provisions at issue and, are therefore, not relevant.  Blue Cross also argues that reference to other lawsuits is hearsay and would prejudice Blue Cross because it would appear that Blue Cross had violated the law based on all these lawsuits against it.

Regarding the lawsuit brought by the Department of Justice of the United States and the Attorney General of the State of Michigan, which was later voluntarily dismissed, Blue Cross argues that the claims brought by the DOJ and the Michigan AG were not based on the same theory of causation as Aetna's lawsuit.  Blue Cross

claims that the DOJ and the Michigan AG's theory of liability was based on examination of rates at individual hospitals with Blue Cross MFNs, but they did not assert any liability for hospitals without MFNs.  Blue Cross argues no facts were established in the suit brought by the DOJ/Michigan AG and in the MDL.

In its response, Aetna agreed it would not refer to the MDL case and the Access Fee cases, with the lead case being the *Hi-Lex* case.  As to *The Shane Group* and the DOJ and Michigan AG cases, Aetna claims that these cases are highly relevant to the central issues of this case: whether Blue Cross' MFNs harmed Aetna and competition, and the extent to which Aetna's hospital rates and competitive positioning would have improved had Blue Cross not implemented its MFNs across the Michigan healthcare market.  Aetna claims that evidence regarding these civil suits is relevant because it casts doubt on testimony by certain hospital executives that have adopted what Aetna claims is Blue Cross' "no harm, no foul" story.  Aetna asserts that its fortunes changed significantly after the private plaintiffs filed their suit and even more following the ban on MFNs in provider contracts.

The Court finds that because the DOJ, the Michigan AG and *The Shane Group* class action cases have been resolved without any finding of liability against Blue Cross in those cases, any reference to those cases would be more prejudicial than probative to show that Blue Cross's MFNs harmed competition because cases

25

involving MFNs were filed against Blue Cross. This would result in litigating the issues brought by the DOJ, the Michigan AG and the plaintiffs in *The Shane Group* class action case. There are sufficient issues raised in the instant case without litigating the issues brought in the other cases. The alleged anti-competitive acts at issue are the MFN provisions effective when Aetna brought the lawsuit and whether competition was harmed because of those provisions. If such MFN provisions were later taken out of the contracts for one reason or another and Aetna shows that since the filing of those suits it was able to secure contracts with better rates, then it matters not the reason why the MFNs were removed from the contracts. Aetna is still able to show that without the MFNs it was able to obtain better rates, which goes to prove Aetna's point that with the MFNs it was unable to obtain better rates. Since the facts after 2010, as argued by Aetna, show that the MFNs were no longer at issue in the contracts, Aetna is still able to argue that the MFNs in effect when it filed the lawsuit harmed competition. Aetna's burden is to show that the MFNs in effect when they filed the lawsuit harmed competition, and therefore, Aetna. It is the MFNs which Aetna alleges harmed competition. The lack of MFNs in contracts after the DOJ, the Michigan AG and the other plaintiffs filed their lawsuits against Blue Cross is not relevant to whether the MFNs in effect at the time Aetna filed the lawsuit harmed competition. The issue that Aetna received better rates after the other lawsuits were

filed and after the MFNs were banned goes to how far out Aetna's damages flow from the time Aetna is found to be harmed.  However, testimony about the other lawsuits is not relevant to show such, because the calculation of damages does not require evidence of the reason why the MFNs were no longer at issue; only that the MFNs were no longer part of the contracts.  This testimony can be presented from those familiar with the contracts, not from the fact that lawsuits were filed.

As to Aetna's claim that the hospital executives' testimony were biased and not credible because of the lawsuits brought by the DOJ, the Michigan AG and *The Shane Group* plaintiffs, Blue Cross claims all the hospital executives were deposed and it was Aetna who failed to ask the executives any question about how these lawsuits impacted the executives' decisions.  Blue Cross asserts Aetna had knowledge of these lawsuits at the time the depositions were taken.  If at trial, Aetna can establish bias by hospital executives because of these lawsuits against Blue Cross, Aetna may raise the issue at that time.  Without hearing the executives' testimony in context and without being able to judge their credibility at this time, the Court cannot make a determination whether the hospital executives were biased in their responses to their depositions.  The Court grants Blue Cross' Motions in Limine to Exclude References to Other Private and Government Lawsuits against Blue Cross.

**K.     Blue Cross' Motion in Limine to Bar Use of Irrelevant and**

27

## Prejudicial Terms Monopoly, Collusion, Conspiracy and their Derivatives (No. 326)

Blue Cross seeks to exclude any reference to the terms monopoly, collusion, conspiracy and their derivatives. Blue Cross asserts that these terms are not relevant in this lawsuit which only involves an anticompetitive contract MFN claims. Blue Cross argues, as Aetna affirmed to the Court, that this case involves 67 MFN contracts. (Doc. No. 314) Blue Cross argues Aetna did not plead a claim under the Sherman Act based on monopoly, collusion or conspiracy.

Aetna responds that it should be able to refer to Blue Cross as a "monopolist" and that it "colluded" and "conspired" with others as to the MFN contracts. Aetna claims the testimony by hospital executives and others, including Blue Cross personnel, show that Blue Cross is a monopolist and the reason for the MFNs was to keep its monopoly of the healthcare insurance industry. Aetna also claims that Blue Cross colluded and conspired with the hospitals to include the MFNs in the contracts to minimize competition.

As noted above, Section 1 of the Sherman Act provides that a contract, combination in the form of trust, *or* conspiracy, in restraint of trade or commerce is illegal. 15 U.S.C. § 1. A plaintiff in a Section 1 claim must prove that defendant 1) contracted, combined or conspired among each other, that such 2) unreasonably

28

restrained trade in the relevant market. *Nat'l Hockey League,* 325 F.3d at 718 (6th Cir. 2003).   The Sherman Act, 15 U.S.C. § 2, declares that a firm shall not "monopolize" or "attempt to monopolize" or "combine or conspire" with any other person to "monopolize" any part of the trade or commerce.  15 U.S.C. § 2.  A claim under Section 2 requires proof of two elements: 1) the possession of monopoly power in a relevant market; and 2) the willful acquisition, maintenance or use of that power by anti-competitive or exclusionary means as opposed to growth or development resulting from a superior product, business acumen, or historic accident.  *Conwood Co., L.P. v. U.S. Tobacco Co.,* 290 F.3d 768, 782 (2002).   A plaintiff must demonstrate that a defendant either unfairly attained or maintained monopoly power. *Id.*

In the Sherman Act, the terms monopolization and conspiracy are terms of art and are expressly noted in the Act.  As alleged by Aetna in the Complaint, it alleges violations by Blue Cross of Section 1 of the Sherman Act, 15 U.S.C. § 1 based on exclusionary contracts with hospitals.  (Comp., Doc. 1) As stated by Aetna on the record, the case involves 67 MFN contracts.   Section 1 sets forth three ways a violation could occur–by contract, or combination, or conspiracy.  Here, Aetna has alleged a violation by way of contracts with MFN provisions.  Section 2 of the Sherman Act involves monopolies.  Aetna's Complaint includes no such claim.

29

Because the terms "monopoly" and "conspiracy" are specific terms in the Sherman Act, which Aetna does not assert any claims under Section 2, those terms should not be used by Aetna to argue that Blue Cross violated the Act because of a "conspiracy" or because of a "monopoly."  Although "collusion" is not an express term under the Sherman Act, it infers a strong conspiracy.  Aetna cannot argue that Blue Cross "colluded" with others to violate the Sherman Act.

However, inasmuch as those terms were used by witnesses during depositions, without prompting by the plaintiffs' counsel and without objections by the defense during the deposition, those terms can remain in any deposition testimony presented to the jury .  Aetna cannot argue during opening or closing statements, or by way of questions, that Blue Cross violated the Sherman Act because of a "conspiracy," a "monopoly" or a "collusion."  Aetna can argue the facts, such as whether Blue Cross was a "dominant" figure in the market or that Blue Cross and the hospitals "agreed" to the terms of the contracts.  Blue Cross' Motion in Limine to Bar Use of the Terms Monopoly, Collusion, Conspiracy and their derivatives is granted as set forth above.

**L.    Blue Cross' Motion in Limine to Exclude at Trial Evidence of All References to MFN Programs (No. 328)**

Blue Cross seeks to exclude evidence from the jury of any form of labeling (mostly by the experts) the contracts at issue or Blue Cross' conduct as "MFN

program," "scheme," "contracting scheme," "contracting program," and "contracting strategy." Blue Cross claims that Aetna's case is based solely on the harm from 67 MFN contracts and Blue Cross' efforts to enforce those contracts. Blue Cross argues that it cannot be held liable for rate decisions made by hospitals without MFNs because those are unilateral decisions by those hospitals. Blue Cross argues that evidence of other hospitals' decision-making does not prove anything about Blue Cross' actions. Blue Cross claims that Aetna made the same arguments in another antitrust case which was accepted by the district judge, citing, *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.,* No. 12-cv-05847-JST, 2013 WL 3242245 (N.D. Cal. June 25, 2013). Blue Cross also argues that reference to other hospitals' decision-making outside the 67 MFN contracts at issue would confuse the jury because it would be difficult for the jury to keep track of which hospitals had MFNs and which did not. Blue Cross claims that the decision-making of other hospitals as to rates outside the 67 MFN contracts is not relevant as to the effects of the 67 MFN contracts on competition.

Aetna responds that Blue Cross is in reality seeking to exclude broad categories of critical evidence and the motion is a thinly veiled argument for summary judgment. Aetna claims that Blue Cross' motion is premised on a gross distortion of Aetna's claims and legal theory. Aetna asserts that there is a disconnect in that Blue Cross

31

refuses to acknowledge that its MFN contracts caused an array of anticompetitive harms, including harming Aetna's business and altering the incentives of Michigan hospitals, which adversely affected Aetna's ability to secure the improved rates it would have experienced at hospitals throughout Michigan, had Blue Cross not implemented its anticompetitive contracts. Aetna is not seeking to recover for "unilateral conduct" as argued by Blue Cross. Aetna argues that one of the effects of Blue Cross' contracts is that they harmed competition, and that Aetna's business was harmed. Aetna asserts that because of the MFN contracts, Aetna became less attractive for others to deal with, including both customers and hospitals. Aetna argues that the impact on competition from Blue Cross' 67 MFN contracts included adverse effects on Aetna's (and other insurers') ability to secure improved rates from both MFN and non-MFN hospitals.

The Court finds that Blue Cross is seeking more than exclusion of labels and words to be used before the jury. Blue Cross is instead seeking to exclude evidence from hospital executives or the experts as to the reasons why the hospitals would not or could not give Aetna better rates. The Court agrees that the issue in a Sherman Act section 1 anti-trust action is to show how the contracts at issue harmed competition. Aetna is attempting to show this harm by showing that even though hospitals were not parties to the MFN agreement and made "unilateral" decisions, those hospitals'

32

decisions were materially impacted by the MFN agreements.  As an example, Aetna proffered a statement from a non-MFN hospital witness that the hospital was hesitant to agree to provide Aetna with a discount improvement until Aetna could attest to commitments from other facilities or other key providers to provide a "Blues-competitive rate" to Aetna.  (Doc. 349, Pg ID 22798-99) The Court finds statements like these relevant to the issue of whether the MFN agreements impacted competition.  As to confusion, the Court finds that counsel will be able to provide the jury the information as to whether the hospital witness is a hospital that has an MFN contract with Blue Cross.  The *Rheumatology* case cited by Blue Cross involving Aetna is not applicable to this motion in limine since that case involved the issue of whether the plaintiff stated a claim under Rule 12(b)(6), and did not involve the types of evidence a party may present at trial to show whether a certain contract harmed competition.  Blue Cross' Motion in Limine to Exclude at Trial Evidence of and All References to Blue Cross' alleged "MFN Program" is denied.

**M.    Blue Cross' Motion in Limine to Exclude Evidence Quantifying the Alleged Effect of MFNs on Rates at Peer Group 1-4 Hospitals, Peer Group 5 Hospitals Not Listed on Vellturo Exhibit 17A, or Premiums (No. 329)**

Blue Cross seeks to exclude evidence from the jury which was never produced to Blue Cross quantifying the impact of MFNs on Aetna's or other competitors'

hospital rates and premiums. The only such evidence Blue Cross claims Aetna provided during discovery was figures for Peer Group 5 hospitals on the expert, Vellturo's Exhibit 17A. Blue Cross claims Aetna never provided such evidence as to hospital rates and premiums on Peer Group 1-4 Hospitals. Blue Cross further claims that the Rule 30(b)(6) deposition of Dr. Vellturo (not in his capacity as an expert) taken after the close of discovery where he testified that Aetna's rates were $80-$100 million lower as a result of the MFNs should also be excluded. Blue Cross asserts that Dr. Vellturo was not testifying as an expert, but as a representative of Aetna. Blue Cross claims that the $80-$100 million figure is not based on facts known to Aetna, and that Dr. Vellturo, as a fact witness, did not have personal knowledge of the amount. Blue Cross asserts that the underlying document Dr. Vellturo relied on to reach this amount is an internal Blue Cross one page undated document based on rates in other states to quantify the effects of alleged anticompetitive conduct. Blue Cross claims this document was from a third-party vendor about hospital discounts in various areas in the country. Blue Cross claims that this document was never seen or used by Aetna personnel in the course of conducting Aetna's business. Dr. Vellturo also cannot testify to this amount as an expert since he has no data or written calculations to support the figure. Blue Cross notes that Aetna's damages expert, Dr. Bamberger, did not rely on this document.

34

Aetna responds that Dr. Vellturo was not Aetna's Rule 30(b)(6) designee regarding premium-setting. Aetna's designee, Michael Sipos, a senior actuary at Aetna, answered all the questions posed by Blue Cross. Aetna claims that Dr. Vellturo, in his expert report, described his extensive empirical analysis of the impact of Blue Cross' anticompetitive contracts at hospitals throughout Michigan, not merely those listed in Exhibit 17A. Aetna claims Dr. Vellturo also quantified the impact on reimbursement rates at Peer Group 1-4 hospitals with and without MFN provisions in his report at Figure 4.

Blue Cross is seeking to exclude evidence at trial that was not provided during discovery. As a Rule 30(b)(6) designee fact witness, the Court finds that Dr. Vellturo cannot offer any opinion as to calculations of the MFNs' impact on Aetna which are not based on his personal knowledge of Aetna's business and which were not produced to Blue Cross during discovery. Specifically, Dr. Vellturo's calculations as a Rule 30(b)(6) witness of the $80-$100 million impact are not based on any documents Aetna obtained during its course of business. Aetna's fact witnesses may testify as to documents and calculations the witnesses may have performed during Aetna's conduct of its business if such calculations and underlying documents were produced to Blue Cross during discovery, including the discovery conducted by the parties ordered by this Court in 2014. Any calculations by Aetna's witnesses must

35

either be based on personal knowledge as representatives of Aetna or as an expert with proper notice in the experts' reports.  Also, Dr. Vellturo, as an expert, cannot testify to the $80-$100 million impact because this calculation and the underlying document were not identified in his expert report.  Blue Cross' Motion in Limine to Exclude Evidence Quantifying Alleged Impact of MFNs on Rates at Peer Group 1-4 Hospitals, Peer Group 5 Hospitals Not Listed on Vellturo Exhibit 17A, or Premiums is granted as set forth above, unless Aetna can show at trial that this information was produced during the 2014 Court-ordered discovery.

### N.    Blue Cross' Motion in Limine Regarding References to Government or Non-Aetna Plaintiff's Lawyers (No. 330)

Blue Cross seeks to exclude at trial all references to non-Aetna plaintiffs' attorneys, most notably government lawyers, conducting depositions and other references (such as exhibit stickers).  Blue Cross claims that such notifications would prejudice Blue Cross in that Aetna can argue that it was on the "same team" as the United States and the State of Michigan.

Aetna's response focuses on its previous arguments relating to Blue Cross' motion in limine regarding exclusion of other lawsuits.  As to this specific request by Blue Cross, Aetna only argues that it is burdensome, without specifics.

Because the Court has ruled above that no reference should be made to other

36

lawsuits, the Court finds that documents, including deposition transcripts referring to any government counsel would confuse the jury and would be prejudicial to Blue Cross.  The parties must meet and confer to redact any reference to any government lawyers in any documents or depositions to be used at trial.  If a government or non-Aetna counsel's name appears, those names need not be redacted.  Only any reference that the government or non-Aetna counsel's name works for or represents the government or another plaintiff party other than Aetna should be redacted.  Blue Cross' Motion In Limine Regarding References to Government or Non-Aetna Plaintiffs' Lawyers is granted.

### O.    Blue Cross' Motion in Limine to Exclude Evidence Of or References to the Factors Used to Determine Employee Compensation (No. 331)

Blue Cross seeks to exclude from trial all evidence of and references to the factors used by Blue Cross to determine employee compensation as irrelevant and prejudicial.  Blue Cross argues that the compensation and benefit information of its executives is not relevant to whether Blue Cross operated as a nonprofit and charitable institution as required by the statutes.  Blue Cross claims that non-profits and for-profits entities have compensation packages which include incentives.

Aetna claims that the Magistrate Judge has ruled the evidence is relevant.  Aetna argues that the issue of compensation is relevant since Blue Cross claims that

37

it has a social mission and the evidence would show that Blue Cross' executives were "incentivized" to protect Blue Cross' market share and operating profits. Aetna claims that this information is relevant to rebut Blue Cross' motive for seeking MFNs; that it was not because of Blue Cross' status as a nonprofit but because of Blue Cross' executives' incentives.

As noted by the Magistrate Judge in the order regarding discovery issues, the compensation information was relevant. The Magistrate Judge specifically noted that the detailed compensation and benefit information sought in Request No. 18 was *not* relevant to whether Defendant operated as a nonprofit, charitable and benevolent institution. (Doc. No. 92, Pg ID 1535) (italics added). However, the Magistrate Judge found *relevant* the information sought in Request No. 19 for documents which show *all targets, goals or formulas* concerning any form of compensation for certain Blue Cross employees. *Id.* It is noted that the *amount* of such compensation was not ordered to be produced by the Magistrate Judge. The Court finds that the "targets, goals or formulas" concerning the executives' compensation may be relevant to rebut Blue Cross' claim that it sought MFNs because of its statutory mission. However, before presenting this information at trial, Aetna must show that the executives about whom it seeks to present such information had input into the MFN contracting process and that the executives in fact had a compensation package which was tied to these

"targets, goals or formulas."  Aetna must not seek information regarding the amount of the executives' compensation.  Blue Cross' Motion in Limine to exclude Evidence of or References to the Factors Used to Determine Employee Compensation is denied as more specifically noted above.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Blue Cross' Motion in Limine to Exclude At Trial Aetna's Written Expert Reports **(Doc. No. 317)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude Evidence of Supposed Antitrust or Other Legal Concerns **(Doc. No. 318)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude at Trial Evidence of and all References to MFN Hearsay and Speculation **(Doc. No. 319)** is DENIED without prejudice.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude Evidence of Changes to Michigan Law **(Doc. No. 321)** is GRANTED.

IT IS FURTHER ORDERED that Aetna's Motion in Limine to Preclude Evidence or Argument Regarding Blue Cross' Purported Social Mission and Nonprofit Status **(Doc. No. 322)** is DENIED.

IT IS FURTHER ORDERED that Aetna's Motion in Limine to Preclude Blue Cross from Informing the Jury that Compensatory Damages will be Trebled **(Doc. No. 323)** is GRANTED.

IT IS FURTHER ORDERED that Aetna's Motion in Limine to Preclude References to Blue Cross' Mutual Ownership Status **(Doc. No. 324)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude References to Other Lawsuits **(Doc. No. 325)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Bar Use of Irrelevant and Prejudicial Terms Monopoly, Collusion, Conspiracy and their Derivatives **(Doc. No. 326)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude At Trial Evidence of and All References to Blue Cross' Alleged "MFN Program" **(Doc. No. 328)** is DENIED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude Evidence Quantifying the Alleged Effect of MFNs on Rates at Peer Group 1-4 Hospitals, Peer Group 5 Hospitals Not Listed on Vellturo Exhibit 17A, or Premiums **(Doc. No. 329)** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine Regarding References to Government or Non-Aetna Plaintiffs' Lawyers **(Doc. No. 330)** is

GRANTED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude

Evidence of or References to the Factors Used to Determine Employee Compensation

(**Doc. No. 331**) is DENIED.

IT IS FURTHER ORDERED that Blue Cross' Motion in Limine to Exclude

Reference to Government Investigations and Lawsuits (**Doc. No. 332**) is GRANTED.

<u>S/Denise Page Hood</u>
Denise Page Hood
United States District Judge

Dated:  April 14, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 14, 2015, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
Case Manager

41